# DECEMBER, 1907.

T. H. RAWLS v. J. J. TERRELL, COMMISSIONER OF THE GENERAL LAND OFFICE, ET AL.

No. 1734.   Decided December 4, 1907.

**School Land—Bids—Deposit of Payment.**

Where school land is offered for sale on competitive bidding under the Act of April 15, 1905. (Laws, 29th Leg., p. 161, sec. 3), one having due application to purchase on file on the day the land comes on the market and whose deposit of the first payment has been made with the State Treasurer is entitled to the award as against an applicant who bids higher but does not deposit the payment till after the bids are opened.   (P. 160.)

Original proceeding in the Supreme Court on petition of Rawls for mandamus requiring the Land Commissioner to cancel an award of school land to the corespondent Bogel and award same to petitioner on his bid therefor.

*J. W. Maxwell* and *N. A. Rector,* for relator.—The clause "shall be subject to sale . . . . in quantities of not less than eighty acres or multiples thereof," does not require the Commissioner to accept bids for the entire section, made in multiples of 80 acres when the aggregate of such bids is less than is offered for the same section in one single bid.

The facts in the petition paragraph four, show that Bogel was not a competitive bidder. His applications were opened in the land office on April 23, 1907, at which time he had deposited no money in the Treasury, as first payment. Bogel could not be said to be a bidder, on April 23, 1907, when the envelopes containing his applications and obligations were opened and filed. He had no money in the Treasury when the bids were opened and his applications and obligations filed. Relator was the only bona fide bidder. Respondent Bogel had no right thereafter to deposit his money on his said bids so as to relate back to the time of opening the same.

Respondent Bogel was not on April 22, 1907, a person qualified to buy the five sections of school land mentioned in paragraph 5 of relator's petition, (among which is section No. 200 in controversy) for the reason that on June 21, 1906, he had purchased said five sections of land, and had in September thereafter abandoned his residence on his home section, and his purchases of said sections were forfeited by the Commissioner for abandonment on January 1, 1907. His applications to buy the same lands on April 22, 1907, which were supported by his affidavit that he had not since March 19, 1901, bought any school lands were not true in fact.

*R. V. Davidson,* Attorney-General, and *Wm. E. Hawkins,* Assistant, for respondent Terrell.—A tract is used interchangeably with survey and section and is the land applied for. Section 3, Act of April 15, 1905; Raper v. Terrill, 100 Texas, 287; Simon v. Stearns, 17 Texas Civ. App., 17.

School land may be sold upon separate applications in 80 acre tracts or multiples thereof up to a whole survey or section. Art. 4218f, Chap. 129, Act of 1897; Simon v. Stearns, 17 Texas Civ. App., 17.

Each application must be for a separate tract. Section 3, Act of April 15, 1905.

The land applied for in each application is the unit as to sales under such applications and each application that offers the highest price for the tract applied for must be accepted. Section 4, Act of April 15, 1905.

*Charles Rogan* and *A. T. Folsom,* for respondent, Bogel.—This Statute (Rev. Stats., art. 4218 f) in so far as it provides for the sale of school land in tracts of eighty acres or multiples thereof, con-

tinued to be the law until it was repealed by the Act of 1907. The latter Act, for the first time since the Act of 1895 became a law, declared that the school land shall be sold "in whole tracts only." Act of 1907, sec. 6b and 6e, pp. 492-5. There have been many changes in the law since the Act of 1897 was passed, but none of them changed the rule with regard to the size of the tract until the Act of 1907 was passed.

Section 2, page 293, of the Act of 1901, uses the word "tract" without regard to size or quantity in prescribing how applications to purchase land shall be made and filed. The same is true with regard to section 3, page 160 of the Act of 1905, upon which this suit is based. As each subsequent Legislature used the word "tract," without specifying the size thereof, in order to determine the size at which sales are authorized, the Act of 1897 must be resorted to, as that is the last act regulating the size.

MR. CHIEF JUSTICE GAINES delivered the opinion of the court.

This is a petition for the writ of mandamus to compel the Commissioner of the General Land Office to cancel an award of a section of school land to the co-respondent, W. W. Bogel, Jr., and to award the land to relator.

The land in controversy came on the market April 22, 1907. On that day the relator and the co-respondent each had on file in the General Land Office bids for the land—the relator's being $7.07 for the whole section; those of the co-respondent being $25.04 per acre for the W. ½ of the N. W. ¼ of the section, $10.04 for the E. ½ of the N. W. ¼ of same, and another bid for the E. ½ and for the S. W. ¼ of the section at $3.50 per acre. Each of these bids was in a separate application to purchase. The aggregate of the co-respondent's bid was $4486.40, while that of the relator amounted to $4524.80. Upon passing upon the bids the Commissioner first awarded to the co-respondent the W.½ and the E.½ of the N. W.¼ of the section and offered to accept the bid of the relator for the remainder of the tract, which the relator declined. Thereupon the Commissioner awarded the remainder to the co-respondent under his bid. It is distinctly alleged in the petition that at the time of making his applications and executing his obligation the co-respondent "did not have on deposit with the State Treasurer 1-40 of the purchase price so offered for said land and did not deposit said sum with the Treasurer until April 24, 1907," which was one day after they were opened.

The relator assails the award upon three grounds: 1. That since the co-respondent did not have on deposit with the Treasurer the cash payment required by law to be deposited with that officer on the day the bidding was closed nor on the day the bids were opened, the award is illegal.

2. That the whole section having been offered for sale the Commissioner was without power to accept bids for a part or parts of the section and to award the land in accordance with such bids.

3. That the co-respondent having purchased these five sections previously, could only purchase three additional sections to make up the complement of eight sections, to which the law entitled him.

Being of the opinion that the first objection to the award is well taken, we deem it unnecessary to pass upon the other two. The part of the statute applicable to this matter is as follows: "Sec. 4. When the applications and obligations aforesaid have been filed in the General Land Office, and upon inspection they are found correct and the land is found to be classified and valued and on the market for sale the day the application was filed, or on any prior date and still unsold, and the first payment is in the State Treasury, it shall be the duty of the Commissioner to award the land to the one offering the highest price therefor." (Laws 1905, p. 161.) Section 3 (the preceding section of the act) provides, in effect, that "the application, affidavit and obligation" shall be filed on or before the day the land comes on the market—which means, of course, that the application, etc., shall be on file on that day. The provision of section 4 quoted above in stating the conditions upon which the Commissioner is authorized' to consider a bid and award the land, states one of them as being "when the applications and obligations aforesaid have been filed in the General Land Office, and upon inspection they are found correct"—it also provides another, to-wit: when "the first payment is in the State Treasury." The statute makes it the duty of the Commissioner of the General Land Office to announce a day on which the land is to be open to competitive bidding and contemplates that on that day anyone desiring to bid, shall have done everything required of him to become a purchaser— that is to say, his application and accompanying documents shall be on file, and his first payment shall be in the State Treasury. If we could absolve him from the latter requirement and permit him to make his first payment on the day his bid is accepted, why not allow him to take the land upon a bid not filed on or before the land came on the market, but brought forward after the other bids were opened. The requirements seem to be as peremptory on the one case as on the other. It may be the Legislature in making the provisions thought only of laying down a fixed rule—but if so, "they builded better than they knew." For if an applicant be permitted to make his first payment after the award is made, it would be in his power in case he was the only bidder to decline the payment and make application for the land at its appraised value and thereby acquire it at a less price than he had previously offered.

We conclude that since the co-respondent did not have his first payment in the Treasury at the time the bids were opened, he was not in the eye of the law a bidder, and the Commissioner was without power to award him the land.

We think the mandamus as prayed for should be awarded, and it is accordingly so ordered.