The STATE of Texas, Petitioner,

v.

LIQUIDATING TRUSTEES OF REPUB-
LIC PETROLEUM COMPANY
et al., Respondents.

No. B–4210.

Supreme Court of Texas.

March 13, 1974.

Rehearing Denied June 19, 1974.

John L. Hill, Atty. Gen., Roland Allen, Asst. Atty. Gen., Austin, for petitioner.

Kilgore & Kilgore, James A. Kilgore, Dallas, for respondents.

**312**

DANIEL, Justice.

This is an action by the State of Texas under Article 3272a to recover on behalf of the State Treasurer the custody of dividends held in a Dallas bank by the liquidating trustees of Republic Petroleum Company, a defunct corporation.[1] The company, had been organized under the laws of New Mexico, and was dissolved in that State in 1949. At the time this suit was filed, the surviving trustees had resided in Texas for at least 15 years, and the funds, representing unpaid liquidating dividends owing to 208 stockholders, were held by the trustees in the Republic National Bank of Dallas. The whereabouts of these stockholders were reported by the trustees to the State Treasurer in accordance with Article 3272a as unknown for more than seven years, but their last known addresses were reported to be in various States and foreign countries. Only one had a last known address in Texas.

The trial court held that the State was not entitled to recover custody of any of the funds due stockholders with last known addresses outside of Texas. The Court of Civil Appeals affirmed. 497 S.W.2d 527. We reverse and remand for entry of judgment in accordance with this opinion.

When Republic Petroleum Company was dissolved in New Mexico on December 17, 1949, effective December 31, 1949, its president, secretary and four of its five directors were certified to be residents of Dallas, Texas. The dissolution and distribution of liquidating dividends from 1950 until this suit was filed in 1965 were handled by Dallas attorneys for the surviving liquidating trustees, who, during all of such time, resided in and conducted their liquidating operations in Dallas, Texas. In 1950, approximately $120,000.00 was transferred from a California bank to the account of the Liquidating Trustees in the Republic National Bank in Dallas. All has been distributed to stockholders except expenses of liquidation and the amount now

in controversy. According to a report filed with the State Treasurer by H. H. Myers, Surviving Liquidating Trustee, dated July 3, 1963, the original total balance due the stockholders whose whereabouts were unknown for more than seven years was $27,524.53, and their existing interest in available funds totaled $19,132.94. It was explained that this decrease was due to "payments of fees and expenses" in connection with the liquidation.

The unpaid stockholders had last known addresses in at least 20 States, the District of Columbia, and four foreign countries. One was in Texas and none in New Mexico. The amounts reported as due and available to each stockholder averaged less than $100.00. The report of such unpaid dividends, made on behalf of the trustees in accordance with Article 3272a, had the following notation: "This report is filed solely to prevent claim of default. We do not admit that the funds above listed are subject to escheat, or that this report is necessary under the statute."

The State Treasurer and the Attorney General complied with all provisions of Article 3272a prerequisite to the filing of this suit, and the surviving trustees raise no question in that regard. Their principal contention is that a judgment giving Texas custody of the funds would be a denial of due process, because it would not relieve them of rival escheat claims of other States, especially those which might be asserted by the States of last known addresses and New Mexico as the last State of corporate domicile.

We find no merit to the trustees' contention that New Mexico might successfully claim to be the domiciliary State of a corporation which was dissolved in that State more than 24 years ago. It is conceded by the parties that both Texas and New Mexico follow the general equitable rule that upon dissolution of a corporation, its assets constitute a trust fund for

---

1. All statutory references are to Vernon's Annotated Texas Civil Statutes unless otherwise noted.

the benefit of its stockholders and creditors, with the surviving directors serving as liquidating trustees. 36 Am.Jur.2d § 449. Under New Mexico laws, the surviving trustees could have conducted their liquidation operations in New Mexico,[2] but they did not elect to do so. Instead, they moved the dividends in question to the city of their residence in Texas and have conducted all of their liquidation operations in this State. It is undisputed that these trustees conducted no business in New Mexico during the 15-year period following dissolution and prior to the filing of this suit. Escheat and custodial actions of this nature have been characterized as *in personam,* so far as concerns the stakeholder; as *quasi in rem,* so far as concerns the creditors; and as strictly *in rem,* so far as concerns other claimants. Security Savings Bank v. State of California, 263 U.S. 282, 44 S.Ct. 108, 68 L.Ed. 301 (1923). Texas alleged in its verified petition that the trustees were domiciled in this State, and this was not denied in the unsworn answer of the trustees or by any evidence. Under the pleadings and proof, Texas is the domiciliary State of the stakeholders and the situs of the intangible personal property which is the subject of this lawsuit.

Except as to $114.40 owing to a person with a last known address in Texas, the Court of Civil Appeals held that Texas was foreclosed from recovering custody of the funds by two decisions of the United States Supreme Court: Western Union Telegraph Company v. Commonwealth of Pennsylvania, 368 U.S. 71, 82 S.Ct. 199, 7 L.Ed.2d 139 (1961) and State of Texas v. State of New Jersey, 379 U.S. 674, 85 S. Ct. 626, 13 L.Ed.2d 596 (1965). We disagree. The facts in those cases are clearly distinguishable. In both cases more than one State had jurisdiction over the stakeholders and some or all of the intangible property, and more than one State was asserting a superior claim to escheat them.

In the present case, only Texas has jurisdiction over the stakeholders and the property, and the claim of no other State has been asserted.

The *Western Union* case involved Pennsylvania's attempt to effect an outright escheat of unclaimed money orders bought from Western Union in Pennsylvania for transmission chiefly to payees in other States but never cashed by the payees or refunded to the senders. Western Union was a New York corporation with its principal office and the unclaimed funds located there. It was an active on-going corporation with offices throughout the United States. The State of New York had already escheated part of the funds claimed by Pennsylvania and was asserting "actual, active and persistent" claims to the remainder. The Supreme Court decided that case against Pennsylvania on lack of due process, holding that Western Union should not be required to surrender funds actively claimed by at least two States, with potential claims by others, when Pennsylvania had no jurisdiction to enter "a binding judgment that would protect Western Union against subsequent liability to other States."

In the present case, the trustees have no problem of protection against subsequent liability to other States which may subsequently assert and prove superior claims to any of the funds delivered by them to the custody of the State Treasurer in accordance with Article 3272a. The Texas Act provides for such protection. Although commonly referred to as an escheat law, it is custodial in nature. Sections 2 and 3 provide for the report which was made by the trustees to the State Treasurer and for posting, publishing and mailing of notices in an attempt to locate the owners. Thereafter, as to any of such property remaining unclaimed, Section 4 provides that it shall be delivered by the holder "to the custody

---

2. Articles 51–7–3 et seq., New Mexico Statutes.

of the State Treasurer," and subsection (c) thereof provides:

"Upon the payment or delivery of abandoned property to the State Treasurer, the State shall assume custody and shall be responsible for the safekeeping thereof. Any person who pays or delivers abandoned property to the State Treasurer under this Article is relieved of all liability to the extent of the value of the property so paid or delivered for any claim which then exists or which thereafter may arise or be made in respect to the property."

Section 6 provides for the filing of subsequent claims with the State Treasurer by "any person claiming an interest in any property paid or delivered" to him under the Act.[3] Section 7 provides for administrative determinations and payment of any valid claims by the State Treasurer from an Escheat Expense and Reimbursement Fund.[4] Section 8 provides for judicial appeals by any person aggrieved by an administrative decision. Permission is expressly granted "to any and all such claimants to sue the State of Texas, as herein provided." Thus, not only are the trustees expressly relieved by the State of any liability, but express provisions are made for reimbursement to any person, including any State, which comes forward with proof of a valid superior claim to any of such funds which are delivered by the holders to the custody of the State Treasurer.

The facts in our case are more like those in Standard Oil Co. v. New Jersey, 341 U. S. 428, 71 S.Ct. 822, 95 L.Ed. 1078 (1950), in which the Court upheld New Jersey's escheat of unpaid dividends owing to persons last known to be located chiefly outside of New Jersey, when there was no other State making any active claims thereto. In reaching a different result in the subsequent *Western Union* case, *supra,* the Court referred to the *Standard Oil* case without overruling it, pointing out the distinguishing fact that the claim of no other State to the property was before the court and adding: "Here, unlike *Standard Oil,* there is in reality a controversy between States . . . over the right to escheat part or all of these funds." With further reference to *Standard Oil, supra,* it is interesting to note that dissents by Justices Frankfurter, Douglas and Black indicated that custodial statutes might satisfy their differences with the majority opinion. For other cases with holdings similar to *Standard Oil,* when only one State was seeking escheat or custody against a holder domiciled in that State, see Anderson National Bank v. Luckett, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944) and Security Savings Bank v. California, 263 U.S. 282, 44 S.Ct. 108, 68 L.Ed. 301 (1923).

Texas v. New Jersey, *supra,* is likewise distinguishable. It involved a direct controversy between four states over unclaimed funds, uncashed checks, etc., accumulated over a period of from seven to forty years by Sun Oil Company, a Pennsylvania corporation with principal offices located in that State. However, in that case the court admittedly adopted a new rule of convenience and equity by which each State was awarded that portion of the funds owing to persons whose last known addresses were within such State according to the debtor's books and records. As to property owed persons with no record of any address and "last known address" States which were not parties to the suit, the court permitted recovery by the domiciliary State subject to future assertion of superior claims by the State of the credi-

---

3. The definition of person in Section 1(a) of the Act includes "any governmental or political entity . . . ."

4. This is a revolving fund of $100,000 created by Section 15 of the Act to be maintained by the State Treasurer, one-half of which "shall be maintained for reimbursement of persons who obtain decisions or judgments in accordance with Sections 6 and 7 . . . ."

tors' last known addresses. In this connection, the court said:

"This leaves questions as to what is to be done with property owed persons (1) as to whom there is no record of any address at all, or (2) whose last known address is in a State which does not provide for escheat of the property owed them. The Master suggested as to the first situation—where there is no last known address—that the property be subject to escheat by the State of corporate domicile, provided that another State could later escheat upon proof that the last known address of the creditor was within its borders. Although not mentioned by the Master, the same rule could apply to the second situation mentioned above, that is, where the State of the last known address does not, at the time in question, provide for escheat of the property. In such a case the State of corporate domicile could escheat the property, subject to the right of the State of the last known address to recover it if and when its law made provision for escheat of such property. *In other words, in both situations the State of corporate domicile should be allowed to cut off the claims of private persons only, retaining the property for itself only until some other State comes forward with proof that it has a superior right to escheat.*" (Emphasis supplied.)

The Court of Civil Appeals correctly recognized Texas to be the domiciliary State of the stakeholders, but it interpreted the above quoted language to mean that a mere showing (or proper assumption) that all other "last known address" States have an escheat or custodial law similar to the Texas Act is sufficient to defeat this action by the State of Texas, even though no other State has come forward with an assertion or proof of a superior right to escheat. See also Central Power & Light Company v. State of Texas, 410 S.W.2d 18

(Tex.Civ.App. 1966, writ ref. n. r. e., cert. denied, 389 U.S. 933, 88 S.Ct. 297, 19 L. Ed.2d 286). Cf. State of Texas v. Texas Electric Service Company, 488 S.W.2d 878 (Tex.Civ.App.1972, no writ). We cannot agree with this interpretation. It would allow the stakeholders to continue to hold, and in many cases dissipate, the property even though no other State ever comes forward with the assertion of a superior claim.[5]

■ In view of the last sentence of the Supreme Court's opinion underlined above, we interpret that decision to mean that in a suit strictly between the domiciliary State and a resident stakeholder, the State is entitled to a judgment against the stakeholder for custody of the property, subject to some other State coming forward at a subsequent time with proof that it has a superior right to escheat or custody. This is the only interpretation which would permit the purpose of State escheat and custodial laws to be effective as to abandoned properties within the jurisdiction of one State but owed to disappeared persons with last known addresses in States which have no jurisdiction to require reporting or delivery of the property. At least this interpretation and result in the present case would bring the funds into the custody of the State Treasurer of Texas, where reports and procedures would be available under the Texas Act for other States to learn of the funds and assert administratively and in our courts any superior rights which they may claim.

We expressly disapprove any holding to the contrary in Central Power and Light Company v. State of Texas, *supra,* and any language to the contrary in State of Texas v. Texas Electric Service Company, *supra.*

Accordingly, the judgments of the lower courts are reversed and the cause is remanded to the trial court for entry of a judgment against the trustees requiring

---

5. For a detailed discussion of the problems and results thus presented, see Escheat of Corporate Intangibles: Will the State of the Stockholder's Last Known Address Be Able to Enforce Its Right? 41 Notre Dame Lawyer 559 (1966).

them *to deliver to the custody of the State* Treasurer all of the funds sued for (except those which have been subsequently removed from the terms of Article 3272a by payment to stockholders or assertion or exercise of claims or acts of ownership) to be retained by the State Treasurer until and unless other persons, including other States, come forward under the procedures set forth in Article 3272a with proof that they have valid claims or superior rights to all or any portion of such funds.