J. Peyton HUNTER, Jr. et al.,
Petitioners,

v.

FORT WORTH CAPITAL CORPORA-
TION et al., Respondents.

No. C–58.

Supreme Court of Texas.

July 15, 1981.

Rehearing Denied Sept. 23, 1981.

Jackson, Walker, Winstead, Cantwell & Miller, C. Steven Matlock, Dallas, for petitioners.

Thorne, Thorne & Robertson, Inc., Michael A. Robertson, Grand Prairie, McBryde, Bogle & Green, John McBryde, Fort Worth, for respondents.

McGEE, Justice.

The question is whether Theodore Moeller can recover damages against the former shareholders[1] of Hunter-Hayes Elevator Company (Hunter-Hayes) for post-dissolution injuries resulting from the negligence of the company. The trial court rendered summary judgment for the shareholders. The court of civil appeals reversed the judgment and remanded the cause for trial. 608 S.W.2d 352. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

In 1960, Hunter-Hayes installed an elevator in a building under construction in Fort Worth, Texas. The company inspected and serviced the elevator until February 1, 1964, when it transferred its assets to Dover Corporation for 25,000 shares of Dover preferred stock. Hunter-Hayes then changed its name to H. H. Hunter Corporation and distributed the shares of Dover stock among its shareholders. On March 11, 1964, H. H. Hunter Corporation (formerly Hunter-Hayes) was issued a certificate of dissolution by the Secretary of State.

Approximately eleven years later, on May 13, 1975, Theodore Moeller was permanently injured when the elevator fell on him. At the time of the accident, Moeller was working in the elevator pit, which is located in the bottom of the elevator shaft, at the direction of his employer, Dover Elevator Company. The elevator fell when a valve in the elevator pit allegedly came apart, allowing its hydraulic system to lose fluid.

Theodore Moeller sued the former shareholders of Hunter-Hayes and others[2] to recover damages for his personal injuries. He alleged causes of action based on negligence and strict liability. The other defendants filed cross-actions against the shareholders, seeking contribution and indemnity. In his suit against the shareholders, Moeller alleged his injuries were proximately caused by the negligent installation, inspection, and maintenance of the elevator by Hunter-Hayes. He also alleged the shareholders were personally liable to him, to the extent of the assets they received on dissolution, under the "trust fund theory."

In response, the shareholders moved for a summary judgment. They alleged Moeller's action and the cross-actions against them were barred because they were not brought within three years after the company dissolved as required by Article 7.12 of

1. The shareholders are: J. Peyton Hunter, Jr., Graeme Hunter, G. W. Hayes, Jr., Harold F. Eltrich, H. F. Tobe, and M. G. Hunter (now deceased).

2. The other defendants are: Fort Worth Title Company, Fort Worth Title Company d/b/a/ USLIFE Title Company of Fort Worth, USLIFE Title Insurance Company of Dallas, Fort Worth Capital Corporation, Walworth Company, and Valve Systems North America, Inc.

the Texas Business Corporation Act.[3] The trial court granted the motion and severed all causes of action against the shareholders so that it could render a final and appealable judgment. Moeller and cross-complainants, Fort Worth Capital Corporation and Stewart DeVore, Sr.,[4] (the prior owner of the building and its majority shareholder) perfected separate appeals. The court of civil appeals reversed the judgment and remanded the cause for trial. The court of civil appeals held that Article 7.12 was vitiated in this cause by the "trust fund theory."

Article 7.12, which is derived from Section 105 of the Model Business Corporation Act, provides:

Survival of Remedy After Dissolution

A. The dissolution of a corporation either (1) by the issuance of a certificate of dissolution by the Secretary of State, or (2) by a decree of court when the court has not liquidated the assets and business of the corporation as provided in this Act, or (3) by expiration of its period of duration, shall not take away or impair any remedy available to or against such corporation, its officers, directors, or shareholders, *for any right or claim existing, or any liability incurred, prior to such dissolution* if action or other proceeding thereon is commenced within three years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The shareholders, directors, and officers shall have power to take such corporate or other action as shall be appropriate to protect such remedy, right or claim. If such corporation was dissolved by the expiration of its period of duration, such corporation may amend its articles of incorporation at any time during such period of three years so as to extend its period of duration.

Article 7.12 provides statutory remedies for pre-dissolution claims only and thus is in the nature of a survival statute. Moeller's cause of action did not accrue until he was injured more than eleven years after the company dissolved. *See Sims v. Southland Corp.*, 503 S.W.2d 660, 663 (Tex.Civ.App.—Tyler 1973, writ ref'd n. r. e.). Consequently, Moeller cannot recover against the shareholders for his post-dissolution claim against the corporation, unless his suit is authorized by some other statute or legal theory.

The shareholders contend the court of civil appeals erred in holding that Moeller could maintain suit against them under the "trust fund theory." More specifically, they argue Article 7.12 supplants the trust fund theory and Moeller must look solely to that statute in order to determine if the legislature provided him with a remedy.

■ This contention calls for a construction of Article 7.12. In doing so, our primary objective will be to ascertain the legislative intent. *State v. Terrell*, 588 S.W.2d 784, 786 (Tex.1979); *Minton v. Frank*, 545 S.W.2d 442, 445 (Tex.1976.) Because Article 7.12 is a provision in the Texas Business Corporation Act, we must ascertain the legislative intent by looking to the entire Act, and not its isolated provisions, keeping in mind at all times "the old law, the evil and the remedy." *Woods v. Littleton*, 554 S.W.2d 662, 665 (Tex.1977); *Calvert v. Kadane*, 427 S.W.2d 605, 608 (Tex.1968). The legislative intent in enacting Article 7.12 is nowhere clearly stated. The comment to Section 105 of the Model Business Corporation Act does not help us either.

■ At common law, dissolution terminated the legal existence of a corporation. Once dissolved, the corporation could nei-

---

3. All statutory references are to Vernon's Texas Business Corporation Act unless otherwise noted. Other statutory references are to Vernon's Texas Revised Civil Statutes Annotated. All emphases are ours.

4. Stewart DeVore, Sr., is in this suit because cross-actions were filed against him before he was removed as a named defendant in Moeller's amended petition.

ther sue nor be sued, and all legal proceedings in which it was a party abated.[5] *Nardis Sportswear v. Simmons*, 147 Tex. 608, 218 S.W.2d 451, 453 (1949); *Burkburnett Refining Co. v. Ilseng*, 116 Tex. 366, 292 S.W. 179, 181 (1927); *Life Association of America v. Goode*, 71 Tex. 90, 8 S.W. 639, 640 (1888); *Lyon-Gray Lumber Co. v. Gibraltar Life Insurance Co.*, 269 S.W. 80, 81 (Tex. Comm'n App.—1925, judgmt. adopted); Model Bus. Corp. Act Ann.2d § 105 Comment (1971).

 To alleviate the harsh effects of the common law on creditors, an equitable doctrine evolved. This doctrine provided that when the assets of a dissolved corporation are distributed among its shareholders, a creditor of the dissolved corporation may pursue the assets on the theory that in equity they are burdened with a lien in his favor. *See Koch v. United States*, 138 F.2d 850, 852 (10th Cir. 1943). This doctrine is often referred to as the "trust fund theory." Actually, the equitable doctrine has a much broader application. The trust fund theory applies whenever the assets of a dissolved corporation are held by any third party, including corporate officers and directors, so long as the assets are traceable and have not been acquired by a bona fide purchaser. Norton, Relationship of Shareholders to Corporate Creditors upon Dissolution: Nature and Implications of the "Trust Fund" Doctrine of Corporate Assets, 30 Bus. Law. 1061, 1074 (1975).

Prior to the enactment of Article 7.12, Texas courts had long applied the trust fund theory to dissolved corporations, but only as it was embodied within the general framework of certain remedial statutes. *See Humble Oil & Refining Co. v. Blankenburg*, 149 Tex. 498, 235 S.W.2d 891, 893 (1951); *Nardis Sportswear v. Simmons, supra*, 218 S.W.2d at 453, 454; *McBride v. Clayton*, 140 Tex. 71, 166 S.W.2d 125, 128

(1942); *Peurifoy v. Wiebusch*, 132 Tex. 36, 117 S.W.2d 773, 775 (1938); *Burkburnett Refining Co. v. Ilseng, supra* 292 S.W. at 181; *Lyons-Thomas Hardware Co. v. Perry Stove Manufacturing Co.*, 86 Tex. 143, 24 S.W. 16, 20 (1893); *Lyon-Gray Lumber Co. v. Gibraltar Life Ins. Co., supra* at 82; *Krueger v. Young*, 406 S.W.2d 751, 758 (Tex.Civ.App.—Eastland 1966, writ ref'd n. r. e.); *Evons v. Winkler*, 388 S.W.2d 265, 270 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.).

As early as 1879, the Texas legislature began enacting remedial statutes which embodied the trust fund theory. Tex.Rev.Civ. Stat. arts. 606, 608 (1879). The purpose of these statutes was to abrogate the common law abatement rule. *Lyon-Gray Lumber Co. v. Gibraltar Life Ins. Co., supra* at 82. In 1909 and 1919, other statutes were added. These statutes were carried forward by subsequent legislatures, with only minor changes, until repealed in 1955 with the enactment of Article 7.12. Among others, the statutes repealed by Article 7.12 were Articles 1388, 1389, 1390, and 1392, Tex.Rev. Civ.Stat. Under these remedial statutes, the legislature had given creditors of a dissolved corporation "the same broad measure of relief which equity would have afforded in the absence of legislation." *Burkburnett Refining Co. v. Ilseng, supra*, 292 S.W. at 181. The effect of these statutes was to supplant the equitable trust fund theory by declaring a statutory equivalent. In Texas, recognition of the trust fund theory, as applied to dissolved corporations, did not exist apart from these statutes.

 We find no indication that the legislature intended for Article 7.12 to be interpreted any differently. Because the statute applies to officers, directors, and shareholders of a dissolved corporation, it embodies the trust fund doctrine but only to the extent that the doctrine allows recovery for

---

5. The reason usually given for the common law rule was Lord Coke's statement of the effects of dissolution: realty reverted to the donor, personalty escheated to the sovereign, and choses in action were extinguished with the death of the corporation. *Fox v. Horah*, 36 N.C. 358, 36 Am.Dec. 48 (1841); *Coulter v.*

*Robertson*, 24 Miss. 278, 57 Am.Dec. 168 (1857). Thus, creditors were left without a defendant to sue. *See* G. Wallach, Products Liability: A Remedy in Search of a Defendant—The Effect of a Sale on Assets and Subsequent Dissolution on Product Dissatisfaction Claims, 41 Mo.L.Rev. 321, 324 (1976).

pre-dissolution claims.[6] Therefore, Article 7.12 expresses a legislative policy to restrict the use of the trust fund theory to pre-dissolution claims, and to protect shareholders, officers and directors of a dissolved corporation from prolonged and uncertain liability. *See Bishop v. Schield Bantam Co.*, 293 F.Supp. 94, 95 (N.D. Iowa 1968); Norton, *supra* at 1077.

 Even if the trust fund theory did exist outside of these remedial statutes, we must assume that when the legislature enacted Article 7.12 it knew to what extent the equitable doctrine already provided a remedy for pre-dissolution claims. *See Allen Sales and Servicenter, Inc. v. Ryan*, 525 S.W.2d 863, 866 (Tex.1975); *McBride v. Clayton, supra*, 166 S.W.2d at 128; *In re Carrigan Estate*, 517 S.W.2d 817, 819 (Tex. Civ.App.—Tyler 1974, no writ). With this in mind, no real purpose would be served by the enactment of Article 7.12, permitting suits against officers, directors, and shareholders of a dissolved corporation, unless the legislature intended for the statute to bar resort to the trust fund theory apart from the statute in order to enforce post-dissolution claims. To hold otherwise would violate the rule of statutory construction that the legislature is never presumed to do a useless act. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535 (Tex.1981); *Red River National Bank v. Ferguson*, 109 Tex. 287, 206 S.W. 923, 925 (1918); *Brown v. Memorial Villages Water Authority*, 361 S.W.2d 453, 455 (Tex.Civ.App.—Houston 1962, writ ref'd n. r. e.). Accordingly, we hold Article 7.12 bars resort to the trust fund theory as it exists apart from the statute.

While this is a case of first impression in Texas, two courts from other jurisdictions have reached this same result interpreting the Illinois corporate survival statute which resembles Article 7.12. The first case is *Reconstruction Finance Co. v. Teter*, 117 F.2d 716 (7th Cir. 1949). In that case, suit was brought against a dissolved corporation and its shareholders to recover on certain guaranties. The suit was filed more than two years after the corporation dissolved in violation of the applicable Illinois statute. The only significant difference between the Illinois statute and Article 7.12 is the period of time after dissolution in which suit must be commenced. The Illinois statute requires a two-year period while Article 7.12 requires three years.

In *Teter*, the plaintiff argued that although the company was dissolved more than two years before the commencement of the suit, it had an equitable remedy against the shareholders, because "in equity the assets of a dissolved corporation passing to its stockholders constitute a trust fund which can be reached in their hands by the corporation's creditors for the purpose of satisfying claims; ..." *Id.* at 725. The court rejected the argument stating that the two-year Illinois statute controlled both the substantive and procedural rights of the parties, to the exclusion of the equitable trust fund theory.

In a more recent case, an Illinois court of appeals reached this same result regarding the applicability of the trust fund theory to a post-dissolution claim. In *Blankenship v. Demmler Manufacturing Co.*, 89 Ill.App.3d 569, 44 Ill.Dec. 787, 411 N.Ed.2d 1153 (1980), suit was brought against the shareholder of a dissolved corporation to recover damages for personal injuries sustained about eight years after the company dissolved. The plaintiff argued that the shareholder was liable under the trust fund theory because he held assets of the dissolved corporation. The court disagreed and wrote:

> We agree with defendant that extension of the trust fund theory to cover plaintiff's claim would mean that the corporation could never completely dissolve

---

**6.** Every case which has applied the trust fund theory has involved claims against the corporation in existence at the time of dissolution. We have been unable to find a single case from this State or any other jurisdiction where the equitable doctrine has allowed recovery for a post-dissolution claim, such as the one here. In theory, there is nothing which precludes application of the trust fund theory to post-dissolution claims. Wallach, *supra* at 331; Norton *supra*, at 1076.

but would live on indefinitely through its shareholders. We do not believe that this result would be in accordance with the spirit of the laws governing the dissolution of corporations.

*Id.,* 44 Ill.Dec. at 790, 411 N.E.2d at 1156.

Moeller contends all remedies available to creditors under the equitable trust fund theory can be utilized where Article 7.12 fails to supply a statutory remedy. He relies on *State v. Liquidating Trustees of Republic Petroleum Co.,* 510 S.W.2d 311 (Tex.1974).

The case of *State v. Liquidating Trustees of Republic Petroleum Co., supra,* involved a suit brought by the State of Texas under Article 3272a, Tex.Rev.Civ.Stat., to escheat dividends of a dissolved corporation payable to persons whose whereabouts were unknown. The suit was against the liquidating trustees of the dissolved corporation who held the dividends in a bank in Dallas, Texas. The corporation had been incorporated in New Mexico and had dissolved twenty-four years before the escheat action was filed. In rendering judgment against the liquidating trustees, this Court stated that "both Texas and New Mexico follow the general equitable rule that upon dissolution of a corporation, its assets constitute a trust fund for the benefit of . . . creditors, with the surviving directors serving as liquidating trustees." *Id.* at 312.

Recognition of the trust fund theory in *State v. Liquidating Trustees of Republic Petroleum Co., supra,* does not support Moeller's contention. A proceeding to escheat personal property can be brought by the State of Texas against every "person" holding property "subject to escheat." Tex. Rev.Civ.Stat. Ann. art. 3272a (1968). The escheat statutes define "person" to include a "liquidator." *Id.* Such a proceeding would always have to be brought against liquidators more than seven years after the date of dissolution because the whereabouts of the owner of personal property must be

unknown for seven years before the property is "subject to escheat." Tex.Rev.Civ. Stat.Ann. art. 3272 (1968). Apart from Article 7.12, the escheat statutes provide a statutory remedy whereby the State can sue liquidating trustees of a dissolved corporation to escheat personal property in their hands. Recitation of the trust fund theory was dictum since it was not necessary to dispose of that case. Under the escheat statutes, the State can recover funds "subject to escheat" without a lien attaching in their favor under the trust fund theory. Also, the only question raised in the case was whether the State could, under the United States Constitution, reach funds belonging to persons whose last known addresses were outside the State. No question was raised concerning the legislature's intent in enacting Article 7.12.

If the legislature had intended for shareholders of a dissolved corporation to be liable for causes of action which accrue after dissolution, it could have easily provided so within the statutory language of Article 7.12. Only when it is necessary to give effect to the clear legislative intent can we insert additional words into a statutory provision. *Mauzy v. Legislative Redistricting Board,* 471 S.W.2d 570, 572 (Tex. 1971); *Texas & N.O.R. Co. v. Railroad Commission of Texas,* 145 Tex. 541, 200 S.W.2d 626, 629 (1947). A provision was included to provide creditors with a statutory remedy for pre-dissolution claims. A similar provision could have been included to encompass post-dissolution claims as well. We believe the exclusion of such a provision to be significant. In the absence of such a provision in Article 7.12 or some other statute, we hold Moeller cannot recover from the shareholders for his post-dissolution negligence claim against Hunter-Hayes.[7]

Fort Worth Capital Corporation and Stewart DeVore, Sr., who, along with Moeller, are respondents in this case, contend that their cross-actions against the

7. We note that there are no allegations or indication that the dissolution of H. H. Hunter Corporation (formerly Hunter-Hayes) constituted a fraud on creditors or other litigants. From

the limited record before us, it appears the dissolution was accomplished for a legitimate purpose and in accordance with statutory requirements.

shareholders for contribution and indemnity can also be brought under the trust fund theory. We disagree. Neither contribution nor indemnity are recoverable from a party against whom the injured party has no cause of action. *City of San Antonio v. Talerico*, 98 Tex. 151, 81 S.W. 518, 520 (1904); *Grove Manufacturing Co. v. Cardinal Construction Co.*, 534 S.W.2d 153, 156 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n. r. e.); *City of Houston v. Watson*, 376 S.W.2d 23, 33 (Tex.Civ.App.—Houston 1964, writ ref'd n. r. e.); *see Reed Tool Co. v. Copelin*, 610 S.W.2d 736 (Tex. 1980). Because Moeller has no cause of action for personal injuries against the shareholders, we hold Fort Worth Capital Corporation and Stewart DeVore, Sr., have no right of contribution or indemnity from the shareholders.

We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

SPEARS, J., dissents in an opinion in which RAY, J., joins.

SPEARS, Justice, dissenting.

I respectfully dissent.

The legislative intent contrived by the majority opinion of the court cannot survive even casual examination. In article 7.12 of the Texas Business Corporation Act the legislature set a limit of three years on suits against officers, directors and shareholders "for any right or claim *existing*, or any liability incurred *prior* to such dissolution." If the legislature had intended that the limit of three years also would apply to rights or claims arising *after* the date of the dissolution, they could easily have said so but did not. *If the legislature does not mean what it says, it must say so. See Brazos River Authority v. City of Graham*, 163 Tex. 167, 354 S.W.2d 99, 109 (1961). Here, the court has invaded the legislative function by judicially amending the statute and adding words that are neither contained in the language nor implicit in the words used.[1] In *City of Nassau Bay v. Winograd*, 582 S.W.2d 505, 508 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n. r. e.), the court correctly and succinctly stated the rule:

> The intention of the legislature in enacting a statute must be determined from the language of the statute as therein set out. Courts must not look elsewhere than to the language of the statute to ascertain its intent.

In *A. M. Servicing Corp. of Dallas v. State of Texas*, 380 S.W.2d 747, 748 (Tex.Civ.App.—Dallas 1964, no writ), the court stated:

> [C]ourts may not, under the guise of construction, amend a statute by adding provisions thereto, no matter how desirable such additions might seem to the judge.

In *Gilmore v. Waples*, 108 Tex. 167, 188 S.W. 1037, 1038 (1916), this court observed:

> A statute so plain and unmistakable leaves nothing for interpretation or construction. All that courts may do with such a statute is to observe it and enforce it. There is an omission in the law, it is true. But it is not the business of courts to supply omissions in laws.

Accord: *Rawls v. Terrell*, 101 Tex. 157, 105 S.W. 488, 491 (1907).

An analysis of the repealed statutes and case authorities cited in the majority opinion reveals that they all involved only pre-dissolution claims. None of the authorities cited address the question of post-dissolution claims. Even assuming *arguendo* that article 7.12 was intended to supplant applicability of the trust fund theory as to pre-dissolution claims, none of the authorities even implicitly support the supplanting of post-dissolution claims.

It is important to note that the trust fund theory was available to the creditor under the rules of equity which pre-existed the statutes. *See, e. g., Panhandle Nat'l Bank v. Emery*, 78 Tex. 498, 15 S.W. 23, 24 (1890). The egregious error of the court is focused in the erroneous conclusion that the repeal

---

1. This writer previously has protested this same vice in the dissenting opinion in *Ex parte John Abell*, 613 S.W.2d 255, at 263 (Tex.1981).

of the cited predecessor statutes to article 7.12 abolished the trust fund theory. The Texas cases do not support this. Rather, it is clear that the trust fund theory has been recognized as an equitable principal apart from statutes which embraced it, and coexists along with the statutes. *Nardis Sportswear v. Simmons*, 147 Tex. 608, 218 S.W.2d 451 (1949); *Burkburnett Refining Co. v. Ilseng*, 116 Tex. 366, 292 S.W. 179 (1927); *Lyon-Gray Lumber Co. v. Gilbraltar Life Insurance Co.*, 269 S.W. 80 (Tex.Comm.App. 1925, judgmt. adopted). These cases, cited in the court's opinion, expressly recognize that the trust fund theory is available to the creditors of a corporation under either the statutes or equity. In *Nardis*, this court quotes from our prior decision in *Burkburnett*:

> In Texas, our courts have long adhered to the doctrine that the assets of a dissolved corporation will be protected in equity as a trust fund for creditors and stockholders. In 1907 our Legislature began the enactment of remedial statutes. In 1919 other articles were added. As we construe our statutes, the Legislature has given to creditors and stockholders of a dissolved corporation the *same* broad measure of relief *which equity would have afforded in the absence of legislation.* (emphasis added) 218 S.W.2d at 455.

We further said in *Burkburnett*:

> [I]t is probable, at all events, if the statutory remedy is incomplete, or in any set of circumstances inadequate, that equity still has jurisdiction to assist by granting additional relief. 292 S.W. at 181.

In *Lyon-Gray Lumber*, the court said:

> [W]hatever may be contended as to equitable processes and remedies generally, it is quite plain that *equitable rights and principles have been continually a part of the law of Texas, and that among these has always been the doctrine that the creditors of a corporation, upon its dissolution, have the right to be paid out of its assets with priority to its stockholders* .... To enforce rights of this nature, statutes, sometimes in aid and sometimes

to the exclusion of equitable remedies, were passed by various states of this Union, whereby the debts of corporations were declared to survive their dissolution and made collectible against trustees or through receiverships or by means of the extension of corporate existence, especially for winding up. And all of these resorts amounted in substance to the same thing. 269 S.W. at 81. (emphasis added)

The court then held that the statute extending the remedy against the dissolved corporation did not operate to take away or confer any substantive right; it only supplied a form or procedure. The court then said:

> Everything it [the statute] did could have been accomplished in the present case without it, though with less ease. 269 S.W. at 82.

Contrary to the view expressed in the court's opinion, the case of *State of Texas v. Liquidating Trustees of Republic Petroleum Co.*, 510 S.W.2d 311, 312 (Tex.1974), illustrates this court's recognition of the trust fund theory apart from the statutes. We observed:

> It is conceded by the parties that both Texas and New Mexico follow *the general equitable rule* that upon dissolution of a corporation, its assets constitute a trust fund for the benefit of its stockholders and creditors, with the surviving directors serving as liquidating trustees. (emphasis added)

While article 7.12 was not mentioned in the court's opinion, it was discussed in the briefs of the parties. We ignored article 7.12, however, and found in the escheat statutes the authority to impose accountability on the trustees for funds held long after the three-year limitation of article 7.12.

That the legislative intent found by the majority is erroneous is further demonstrated by the fact that in enacting article 7.12 in 1955, the legislature did not bar or limit post-dissolution claims but allowed the language of *Nardis* and *Burkburnett*, recognizing the trust fund theory as a separate equitable remedy, to stand. This acquies-

cence by the legislature would constitute approval rather than disapproval of the continued existence of the equitable remedy. "All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with the existing law...." *McBride v. Clayton*, 140 Tex. 71, 166 S.W.2d 125, 128 (1942).

There is still an additional reason why the legislature could not have intended the result reached by the court. Persons sustaining post-dissolution loss or injury resulting from the negligence, a defective product, or breach of warranty of the dissolved corporation are left completely without a remedy under the rule announced by the majority. Not even the legislature was so insensitive as to cut off pre-dissolution claims with no remedy at all. A cause of action for personal injury arises when the wrongful act effects an injury. *Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex.1977). In strict liability suits, a cause of action arises when actual physical harm to person or property occurs. *Lubbock Manufacturing Co. v. Sames*, 598 S.W.2d 234, 236 (Tex.1980). Under the court's opinion here, persons injured or damaged by a defective product *after* the date of dissolution have *no remedy at all*, not even resort to the equitable trust fund theory. At the time of the enactment of article 7.12 in 1955, Texas had not yet recognized a cause of action for strict liability in products cases. It was not until *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex.1967), that this court imposed liability without fault upon manufacturers of defective products that are unreasonably dangerous under § 402A of the Restatement 2d of Torts. Even though the legislature evidenced its intent to allow injured parties a remedy to recover for pre-dissolution inju-

ries in article 7.12 (and similarly in other statutes),[2] this court, by judicially amending article 7.12 has eliminated the remedy for what the law clearly declares as actionable conduct before the injured party's cause of action even arises.

A more classic instance of unjust enrichment is difficult to imagine, and unjust enrichment is said to be the very basis of the imposition of the trust fund theory. Norton, J.J., *Relationship of Shareholders to Corporate Creditors Upon Dissolution: Nature and Implications of the "Trust Fund Doctrine of Corporate Assets,"* 30 The Business Lawyer 1061, 1067 (1975). The shareholders of the Hunter-Hayes Corporation have received assets upon dissolution, in this instance, the stock of Dover Corporation, the successor corporation, and thus have sustained no financial loss. Under the court's opinion, the burden of loss for defective products, negligence, and breached warranties has now been shifted to innocent parties. This decision is an atavistic return to jurisprudential dark ages when the imposition of a public responsibility on corporations was unheard of. *See* White, Edward G., *The American Judicial Tradition*, ch. 2, Oxford Univ. Press 1976.

This case cries out for the application of the equitable trust fund theory under which shareholders of the dissolved corporation are accountable to the creditors of the corporation to the extent of assets received upon the dissolution. If a limitation for bringing suit for post-dissolution claims is to be imposed, it should be done by the legislature as in other suits.

Further mischief is done by the court's opinion in this case. The owners of the building have thus far been held liable for Moeller's injuries under the rule of *Bond v. Otis Elevator Co.*, 388 S.W.2d 681 (Tex. 1965), under which the negligence of Hunter-Hayes was imputed to the building own-

---

**2.** An illustration of a legislative enactment designed to cut off late suits but nevertheless provide a remedy is article 5536a, limiting suits arising out of construction projects on real property to ten years.

In the 1981 Regular Session of the 67th Texas Legislature, consideration was given to several

bills that would impose a time limit on suits for injuries caused by defective products. Proposals ranged from a period of years to the expiration of the product's "useful safe life." *See, e. g.*, House Bill 2310.

er.[3] Normally, the building owner may obtain indemnity from the negligent party; however, the negligent party, Hunter-Hayes, now no longer exists. The court's holding here requires, because indemnification was not sought prior to the time the right of indemnity even arose, that indemnity is barred. Again, the established right is worthless because of the lack of a remedy.

The net effect of the court's holding is to permit, and even encourage, the evasion of historic common law principles and sound public policy that wrongdoers respond in damages to a person injured as a proximate cause of that wrong. As some writers have openly observed, a corporation seeking to acquire another corporation should purchase only its assets in exchange for stock in the purchasing corporation. *See* Wallach, George I., *Products Liability: A Remedy in Search of a Defendant—The Effect of a Sale of Assets and Subsequent Dissolution on Product Dissatisfaction Claims*, 41 Mo.L. Rev. 321, 335 (1976). The selling corporation, left with no assets except the stock it received for the sale, distributes that stock to its own shareholders, then dissolves. By this procedure, the acquiring corporation obtains all of the benefits and assets of the dissolved corporation but none of its liabilities. The shareholders of the dissolved corporation have received value for their stock, yet are shielded from contributing to the compensation of the victims of the wrongs perpetrated by the dissolved corporation to the extent of assets received by them upon dissolution. The acquiring corporation gets only the best of its bargain, and the new shareholders lose nothing but their obligation to redress their old corporation's wrongs. The only losers are the victims of the wrongs that were set in motion during the dissolved corporation's existence. Such a public policy should not be countenanced by any court.

In view of the fact that the court's opinion is now the law, it should be observed that several viable methods of permitting creditors' recovery for post-dissolution claims are suggested by Professor Wallach in his article, *supra*, at pp. 335–344. One theory is the "continuation or successor" theory, under which liability is imposed on the acquiring corporation as a mere continuation of the former. *Cyr v. B. Offen & Co., Inc.*, 501 F.2d 1145, 1152 (1st Cir. 1974). A second theory is the "*de facto* merger" theory. Under this theory, a continuity in operations, combined with a partial continuation of ownership led the court in *Shannon v. Samuel Langston Co.*, 379 F.Supp. 797 (W.D.Mich.1974), to find that a *de facto* merger had occurred. And, under facts almost identical to those in the instant case, the court in *Knapp v. North American Rockwell Corp.*, 506 F.2d 361, 368 (3rd Cir. 1974) cert. denied 421 U.S. 965, 95 S.Ct. 1955, 44 L.Ed.2d 452 (1975), imposed liability on the former shareholders of a dissolved corporation, refusing to "allow a formality to defeat Knapp's recovery." Professor Wallach points out that the decision did not adhere to the traditional distinction between acquisition based on a purchase of assets and acquisition by purchase of shares, merger, or consolidation, but he applauds the decision "for refusing to exalt form over substance."

The summary judgment in this case was granted on the sole ground that the legislature intended that article 7.12 supplant the trust fund theory as the exclusive remedy for creditors of a dissolved corporation as to post-dissolution claims. As demonstrated, that judgment is erroneous. The judgment of the court of civil appeals correctly reversed and remanded this cause for trial, and that judgment should be affirmed.

RAY, J., joins in this dissenting opinion.

---

**3.** That phase of the case was severed, and is presently on appeal.