OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



March 27, 2001

The Honorable Ben W. "Bud" Childers
Fort Bend County Attorney
301 Jackson, Suite 621
Richmond, Texas 77469-3108

Opinion No. JC-0359

Re: Whether, under section 2256.016 of the Government Code, the Texas Local Government Investment Pool may calculate the "maximum average dollar-weighted maturity" of the pool using the reset date of floating rate securities as opposed to their stated maturity date (RQ-0305-JC)

Dear Mr. Childers:

Section 2256.016 of the Government Code requires a public funds investment pool to disclose "the maximum average dollar-weighted maturity allowed, based on the stated maturity date, of the pool," TEX. GOV'T CODE ANN. § 2256.016(b)(2) (Vernon 2000), and "the current average dollar-weighted maturity, based on the stated maturity date, of the pool," *id.* § 2256.016(c)(2)(B). On behalf of your county treasurer, you ask whether, under section 2256.016, the Texas Local Government Investment Pool ("TexPool") may calculate the "maximum average dollar-weighted maturity" of the pool using the reset date of floating rate securities as opposed to their stated maturity date.[1] We conclude that section 2256.016 requires TexPool to calculate the "maximum average dollar-weighted maturity" of the pool's portfolio using these securities' stated maturity dates. TexPool's practice of disclosing information using both the reset date and the stated maturity date of these securities is consistent with section 2256.016.

TexPool is a public funds investment pool organized under chapter 791 of the Government Code, the Interlocal Cooperation Act, and chapter 2256 of the Government Code, the Public Funds Investment Act, which generally governs the investments of state agencies, local governments, and public funds investment pools, such as TexPool. *See id.* § 2256.003. Under the Public Funds Investment Act, an "investment pool" is "an entity created under this code to invest public funds jointly on behalf of the entities that participate in the pool." *Id.* § 2256.002(6). The Public Funds Investment Act refers to a governmental unit subject to its provisions as an "investing entity" or "entity." *See id.* §§ 2256.002(5), .003.

---

[1]*See* Letter from Honorable Ben W. "Bud" Childers, Fort Bend County Attorney, to Honorable John Cornyn, Texas Attorney General at 2 (Nov. 3, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

Section 2256.016(a) authorizes an entity to invest its funds in an investment pool. Subsections (b) and (c) of that provision establish certain requirements an investment pool must satisfy in order to be eligible to receive and invest funds. Those requirements include disclosing in an offering circular, or similar disclosure instrument, information including "the maximum average dollar-weighted maturity allowed, based on the stated maturity date, of the pool," *id.* § 2256.016(b)(2), and providing its investors with a monthly report that contains, among other things, "the current average dollar-weighted maturity, based on the stated maturity date, of the pool," *id.* § 2256.016(c)(2)(B). You inquire about the first disclosure requirement.

We note that two other provisions in the Public Funds Investment Act contain similar language. Section 2256.005 requires investing entities to adopt investment policies. Pooled fund groups' policies must include "the maximum dollar-weighted average maturity allowed based on the stated maturity date for the portfolio." *Id.* § 2256.005(b)(4)(C). In addition, section 2256.019 requires a public funds investment pool to be "continuously rated no lower than AAA or AAA-m or at an equivalent rating by at least one nationally recognized rating service or no lower than investment grade by at least one nationally recognized rating service *with a weighted average maturity no greater than 90 days*." *Id.* § 2256.019 (emphasis added); *see also id.* § 2256.016(h) ("To maintain eligibility to receive funds from and invest funds on behalf of an entity under this chapter, an investment pool must be continuously rated no lower than AAA or AAA-m or at an equivalent rating by at least one nationally recognized rating service."). You have not asked us to construe these provisions and we do not address them.

You explain that TexPool purchases "floating rate securities." The rates of these securities are not fixed but change at set intervals. *See* Request Letter, *supra* note 1, at 1. "As a result, the floater security has two (2) dates important to the investor: the reset date and the maturity date. At the reset date, the security can change the coupon. At the floater's stated (final) maturity date it will mature." *Id.* at 1-2. You state that TexPool "is currently using the reset date (the date of the rate increases) of the floating rate security to calculate the weighted average maturity." *Id.* at 2. The Comptroller's office, which administers TexPool, confirms that "TexPool currently calculates the pool's WAM through use of the final maturity date for fixed rate securities and 'reset date' for floating rate securities."[2] Later in the same letter, however, the Comptroller's office informs us that TexPool is calculating and disclosing weighted average maturity using both "the reset date standard and the final maturity standard." Comptroller Letter, note 2, at 4.

It appears that your county treasurer believes that section 2256.016 of the Government Code requires TexPool to calculate "maximum average dollar-weighted maturity" according to the final maturity date of floating rate securities. Accordingly, you ask the following questions:

> 1. May a public funds investment pool use the "reset date" to calculate their portfolio's weighted average maturity ("WAM"), as

---

[2] Letter from Lita Gonzalez, Associate Deputy General Counsel, Agency Affairs, Office of the Comptroller of Public Accounts, to Honorable John Cornyn, Texas Attorney General at 2 (Dec. 28, 2000) (on file with Opinion Committee) [hereinafter Comptroller Letter].

opposed to the stated maturity date as dictated by § 2256.016(b)(2) of the Government Code?

2. If it is determined that a public funds investment pool may use the "reset date" to calculate their portfolio's weighted average maturity, should the pool additionally disclose the weighted average maturity ("WAM") based on the stated maturity?

3. What recourse, if any, does a public entity in Texas have against a public funds investment pool who inaccurately calculates its weighted average maturity ("WAM")?

Request Letter, *supra* note 1, at 2-3.

First, we address whether calculation of "maximum average dollar-weighted maturity" using floating rate securities' reset dates satisfies the section 2256.016(b)(2) disclosure requirement. Again, that provision requires a public funds investment pool to disclose in an offering circular, or similar disclosure instrument, "the maximum average dollar-weighted maturity allowed, based on the stated maturity date, of the pool." TEX. GOV'T CODE ANN. § 2256.016(b)(2) (Vernon 2000). The answer to this question turns on the meaning of the phrase "stated maturity date" as it is used in section 2256.016. The Code Construction Act provides that "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." *Id.* § 311.011(b) (Vernon 1998). Absent such a meaning, words and phrases are "read in context and construed according to the rules of grammar and common usage." *Id.* § 311.011(a).

No Texas statute or case defines "stated maturity date" (or "maximum average dollar-weighted maturity") for purposes of the Public Funds Investment Act disclosure requirement. We believe, however, that "stated maturity date" is commonly understood to mean the date a security finally matures, and is not commonly understood to refer to other relevant dates such as the date the rate on the security may be adjusted. *See* BLACK'S LAW DICTIONARY 400 (7th ed. 1999) (defining "date of maturity" as "[t]he date when a debt falls due, such as a debt on a promissory note or bond"). Given that each floating rate security has a stated maturity date and it is possible to calculate "maximum average dollar-weighted maturity" using such a security's stated maturity date, this construction of the statute is not absurd. *See* TEX. GOV'T CODE ANN. § 311.021(4) (Vernon 1998) (presumption that in enacting statute "a result feasible of execution is intended"). Because this construction is not absurd or contrary to any clear expression of legislative intent, we are not at liberty to substitute the words "reset date" for the words "stated maturity date" employed by the legislature in section 2256.016(b)(2), or to insert those words into the statute. *See Laidlaw Waste Sys. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995) (courts should not insert words in a statute except to give effect to clear legislative intent); *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 552 (Tex. 1981) (same). Thus, we conclude that section 2256.016 requires TexPool to calculate the "maximum average dollar-weighted maturity" of its portfolio according to floating rate securities' stated date of maturity.

You also ask, "[i]f it is determined that a public funds investment pool may use the 'reset date' to calculate their portfolio's weighted average maturity, should the pool additionally disclose the weighted average maturity ("WAM") based on the stated maturity?" Request Letter, *supra* note 1, at 3. We note that TexPool is currently calculating weighted average maturity based on both the reset date and the stated date of maturity of floating rate securities. *See* Comptroller Letter, *supra* note 2, at 4 ("[T]he calculation of the WAM through use of the reset date standard and the final maturity standard is posted in TexPool's *Information Statement*. Thus, both calculations are available to all participants in the pool."). Disclosure of these two sets of data is consistent with section 2256.016.

Section 2256.016 requires a public funds investment pool to disclose certain data, but it establishes only minimum, threshold disclosure requirements. *See* TEX. GOV'T CODE ANN. § 2256.016(b) (Vernon 2000) (offering circular must contain "*at a minimum,* the following information"); (c)(2) (monthly report must contain "*at a minimum,* the following information") (emphasis added). The statute does not preclude a pool from calculating and disclosing additional data and, by using the words "at a minimum" to describe the required disclosures, *see id.*, appears to expressly contemplate that additional information may be disclosed. Thus, we believe that a public funds investment pool is authorized to calculate and disclose additional data, provided that the methods used to calculate the information are reasonable and the information is not misleading to investors.

The Comptroller's office informs us that TexPool calculates weighted average maturity using the reset date of floating rate securities according to Federal Securities and Exchange Commission ("SEC") rules applicable to money market funds, 17 C.F.R. § 270.2a-7. *See* Comptroller Letter, *supra* note 2, at 2. We understand that these rules, while they do not apply to government funds like TexPool, establish industry standards for money market funds, TexPool's private sector equivalent. *See id.*[3] These rules allow certain securities to be treated as having maturity dates that are shorter than their final maturity dates. For example, certain adjustable rate government securities "shall be deemed to have a maturity equal to the period remaining until the next readjustment of the interest rate. A Government Security that is a Floating Rate Security shall be deemed to have a remaining maturity of one day." 17 C.F.R. § 270.2a-7(d)(1) (2000). We conclude that TexPool may reasonably rely on the SEC rules to calculate weighted average maturity using floating rate securities' reset date. TexPool publications disclosing two sets of maximum average maturity data are explicit about the different parameters used to calculate the two sets of data. *See, e.g.,* http://www.TexPool.com (rate information).

Because we conclude that TexPool's disclosure practices are consistent with section 2256.016, we do not address your final question about what recourse a public entity might have against a public funds investment pool that inaccurately calculates its weighted average maturity. Finally, we note that calculation of weighted average maturity according to floating rate securities' reset dates may be the industry standard for evaluating money market fund portfolios. *See*

---

[3]*See also* Letter from Carol A. Smith, Audit Manager, State Auditor's Office, to Susan D. Gusky, Chair, Opinion Committee, Office of the Attorney General at 2 (Dec. 18, 2000) (on file with Opinion Committee).

discussion *supra*.  In construing section 2256.016, however, this office may not depart from the plain meaning of the words "stated maturity date."

## S U M M A R Y

Section 2256.016(b)(2) of the Government Code requires TexPool to calculate the "maximum average dollar-weighted maturity" of the pool's portfolio using floating rate securities' stated maturity dates. TexPool's practice of disclosing two sets of weighted average maturity data, one using floating rate securities' reset dates and the other using their stated maturity dates, is consistent with section 2256.016.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General - Opinion Committee