Affirmed and Opinion filed January 17, 2008








Affirmed and Opinion filed January 17, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00605-CV

NO. 14-06-00957-CV

____________

 

JUAN GOMEZ, AS PARENT AND NEXT
FRIEND OF MICHAEL GOMEZ, A MINOR, Appellant

 

V.

 

PASADENA HEALTH CARE MANAGEMENT,
INC. AND SOUTHMORE MEDICAL CENTER, LTD., Appellees

 



 

On Appeal from the 11th
Judicial District Court

Harris County, Texas

Trial Court Cause No. 2003-49085A

 



 

O P I N I O N

Appellant, Juan Gomez (AGomez@), appeals from
two orders of the trial court granting summary judgment in favor of appellees,
Pasadena Health Care Management, Inc. and Southmore Medical Center, Ltd. On
appeal, Gomez raises three issues: (1) whether application of the three-year
survival provision of Texas Business Corporation Act Article 7.12 to a minor=s health care
liability claim violates the Open Courts Provision of the Texas 








Constitution;
(2) whether section 10.01 of the Medical Liability and Insurance Improvement
Act, rather than Article 7.12, provides the statute of limitations applicable
to health care liability claims brought on behalf of a minor against a
dissolved corporation; and (3) whether Gomez=s son, Michael,
was a Aknown claimant@ for the purposes
of Texas Business Corporation Act Article 6.04.  Finding no error in the trial
court=s judgment, we
affirm.

Factual
and Procedural Background

On June 5, 1993, Michael Gomez was born at Southmore
Medical Center, a facility then owned and operated by Southmore Medical Center,
Ltd. (ASouthmore@).  Complications
in Michael=s delivery required doctors to deliver him by cesarean
section when an attempted vacuum extraction delivery failed.  When Michael was
two days old, and again when he was twelve months old, he experienced febrile
seizures, and was taken to Texas Children=s Hospital, where
the attending physician noted that a perinatal injury was likely responsible
for Michael=s condition.

At the time of Michael=s birth, Southmore
was a limited partnership comprised of one general partner, Pasadena Health
Care Management, Inc. (APasadena@), and three
limited partners, Touchstone Healthcare Management, Inc. (ATouchstone@), and two
individuals.  In June 1996, Southmore sold Southmore Medical Center to Memorial
Hospital System.  As part of the purchase agreement, Southmore procured a tail
insurance policy and completed a ARisk Management
Summary,@ a list of all
persons thought to have potential claims against Southmore and/or its
constituent partners.  Neither Michael Gomez nor his parents, Juan and Rose
Gomez, were on this list of potential claimants.








On December 24, 1996, Pasadena dissolved.  Neither
Southmore nor Pasadena provided notice of Pasadena=s intent to
dissolve to Michael or his parents.  In July 1998, Pasadena completed the
winding-up of its business affairs, and thereafter both Pasadena and Southmore
ceased all operations.  Over five years later, on August 29, 2003, Gomez, Michael=s father, filed
suit, alleging a cause of action for medical negligence against Dr. James P.
Hernon, Dr. John Devine, Pasadena, Southmore, and Touchstone.[1] 
Gomez alleged that Drs. Hernon and Devine were negligent in their failure to
appropriately manage Rose=s gestational diabetes during her prenatal
care, as well as in their inappropriate use of a vacuum extractor, and in their
failure to timely perform a cesarean section.  Gomez further alleged that
Pasadena and Southmore, through their agents, representatives, and/or
employees, were negligent in their failure to properly interpret the fetal
monitoring strip, as well as in their failure to perform essential
interventions in light of the data shown on the strip.  Later, Gomez amended
his petition to assert this latter cause of action against Michelle Meyer,
R.N., in her individual capacity.

Pasadena and Southmore filed a combined motion for summary
judgment, which the trial court denied.  In their motion, Pasadena and
Southmore argued that the three-year survival provision of Texas Business
Corporation Act Article 7.12 extinguished Gomez=s claim against
Pasadena as of the expiration of the three-year period following Pasadena=s dissolution. 
Pasadena and Southmore further contended that, because its sole general partner
had itself been dissolved, Southmore was no longer a viable legal entity
capable of being sued.








Sometime later, Pasadena filed its own motion for summary
judgment, which the trial court granted.  In its motion, Pasadena reasserted
that its dissolution triggered a three-year survival period which had expired
prior to the filing of Gomez=s claims, and further contended that Gomez
was not a known claimant of Pasadena prior to its dissolution.  Southmore
followed with its own motion for summary judgment, which the trial court also
granted.  Southmore premised its motion on the trial court=s grant of
Pasadena=s motion for
summary judgment and dismissal from the case, reasserting that Pasadena=s dissolution
effected Southmore=s own dissolution, and that Southmore was
no longer a viable legal entity capable of being sued.  The trial court granted
Gomez=s motion for
severance of his claims against appellees,[2]
and this appeal followed.

Issues
on Appeal

Here, Gomez appeals the two orders of the trial court
granting summary judgment in favor of Pasadena and Southmore, respectively.  In
his first issue, Gomez contends that application of the three-year survival
provision of Texas Business Corporation Act Article 7.12 to a minor=s health care
liability claim violates the Open Courts Provision of the Texas Constitution. 
In his second issue, Gomez asserts that section 10.01 of the Medical Liability
and Insurance Improvement Act, rather than Article 7.12, provides the statute
of limitations applicable to health care liability claims brought on behalf of
a minor against a dissolved corporation.  In his third issue, Gomez argues that
Michael was a Aknown claimant@ for the purposes
of Texas Business Corporation Act Article 6.04, and that appellees= failure to comply
with the notice requirements of that provision should preclude them from
receiving the benefit of the three-year survival provision of Article 7.12.  We
address Gomez=s issues in the order he has presented them.

Standard
of Review








We
review the trial court=s grant of summary judgment de novo. Joe v. Two Thirty
Nine Joint Venture, 145 S.W.3d 150, 156B57 (Tex. 2004). 
To prevail on a motion for summary judgment, the movant must show that there is
no genuine issue as to any material fact and that it is entitled to judgment as
a matter of law. Tex. R. Civ. P.
116a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985); Aguirre
v. Vasquez, 225 S.W.3d 744, 750 (Tex. App.BBHouston [14th
Dist.] 2007, no pet.).  A defendant moving for summary judgment must
conclusively negate at least one essential element of each of the plaintiff=s causes of action
or conclusively establish each element of an affirmative defense. Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997); Shirvanian
v. DeFrates, 161 S.W.3d 102, 106 (Tex. App.BBHouston [14th
Dist.] 2004, pet. denied).  When reviewing a traditional summary
judgment, we take as true all evidence favorable to the non-movant, and we
indulge every reasonable inference and resolve any doubts in the non-movant=s favor. Joe,
145 S.W.3d at 157; Aguirre, 225 S.W.3d at 750.

Analysis

I.        No Open
Courts violation.

The first issue in this appeal is whether application of
the three-year survival provision of Texas Business Corporation Act Article
7.12 to a minor=s health care liability claim violates the
Open Courts Provision of the Texas Constitution.  Gomez contends that Article
7.12 effectively cuts off a minor=s cause of action
against a dissolved corporation before he is legally able to assert it, in
direct violation of Article I, sections 13 and 19 of the Texas Constitution.[3] 
Gomez asserts that Michael has a well-recognized cause of action for medical
negligence at common law, and argues that the legislature has failed to provide
an adequate substitute remedy for minors with claims against dissolved hospital
corporations.  Gomez therefore urges this Court to find a reasonable exception
to Article 7.12 as applied to minor claimants.[4]








As a preliminary matter, we must begin with the presumption
that a statute is constitutional. Enron Corp. v. Spring Indep. Sch. Dist.,
922 S.W.2d 931, 934 (Tex. 1996); Andress v. MacGregor Med. Ass=n, P.A., 5 S.W.3d 855,
858 (Tex. App.BBHouston [14th Dist.] 1999, no pet.).  The party
challenging the constitutionality of a statute bears the burden of
demonstrating that the enactment fails to meet constitutional requirements. Enron
Corp., 922 S.W.2d at 934; Andress, 5 S.W.3d at 858.

A.      Courts use
a two-pronged test to determine whether the Open Courts Provision has been
violated.

Article I, section 13 of the Texas Constitution provides
that A[a]ll courts shall
be open, and every person for an injury done him, in his lands, goods, person,
or reputation, shall have remedy by due course of law.@  Tex. Const. art. I, ' 13.  This clause,
sometimes referred to as the AOpen Courts Provision,@ acts as an
additional due process guarantee granted in the Texas Constitution, and
prohibits the legislature from arbitrarily withdrawing all legal remedies from
anyone having a well-defined cause of action under the common law.  See Sax
v. Votteler, 648 S.W.2d 661, 664B65 (Tex. 1983); Andress,
5 S.W.3d at 858B59.








Among its constitutional guarantees, the Open Courts
Provision provides that Athe legislature may not abrogate the right
to assert a well-established common law cause of action unless the reason for
its action outweighs the litigants= constitutional
right of redress.@ Trinity River Auth. v. URS Consultants,
Inc.,
889 S.W.2d 259, 261 (Tex. 1994); Andress, 5 S.W.3d at 859.  To establish
an Open Courts violation in this context, Gomez must show (1) he has a
well-recognized common law cause of action that is being restricted; and (2)
the restriction is unreasonable or arbitrary when balanced against the purpose
and basis of the statute. Moreno v. Sterling Drug, Inc., 787 S.W.2d 348,
355 (Tex. 1990) (citing Sax, 648 S.W.2d at 666); Andress, 5
S.W.3d at 859.  Under the second prong of the test, the court must determine
the restrictiveness of the statute and whether the legislature avoided an
unconstitutional result by leaving a reasonable alternative remedy. Adams v.
Aetna Life Ins. Co., No. B14-93-00596-CV, 1994 WL 668198, at *2 (Tex. App.CHouston [14th
Dist.] Dec. 1, 1994, writ denied) (not designated for publication) (citing Liggett
v. Blocher, 849 S.W.2d 846, 851 (Tex. App.CHouston [1st
Dist.] 1993, no writ)).  An otherwise overly restrictive statute may be
constitutional if there is Aany adequate substitute to obtain redress.@ Id. (quoting
Sax, 648 S.W.2d at 667).

B.      This case
does not meet the first prong requiring a well-recognized cause of action in
common law.

There is no dispute that a suit for medical negligence is
recognized in common law. Andress, 5 S.W.3d at 859.  Likewise, minors have
a well-defined common law cause of action to sue for injuries negligently
inflicted by others. Sax, 648 S.W.2d at 666.  However, at common law,
the legal existence of a corporation was terminated upon dissolution.  Hunter
v. Fort Worth Capital Corp., 620 S.W.2d 547, 549 (Tex. 1981); Martin v.
Tex. Woman=s Hosp., 930 S.W.2d 717,
720 (Tex. App.BBHouston [1st Dist.] 1996, no writ) (en banc).  Once
dissolved, the corporation could neither sue nor be sued, and all legal
proceedings in which it was a party abated. Hunter, 620 S.W.2d at 549B50.

To alleviate the harsh effects of the common law on
creditors, an equitable doctrine evolved. Id. at 550.  This doctrine,
often referred to as the Atrust fund theory,@ provided that
when the assets of a dissolved corporation were distributed among its
shareholders, a creditor of the dissolved corporation could pursue the assets
on the theory that, in equity, they were burdened with a lien in his favor. Id.
(citing Koch v. United States, 138 F.2d 850, 852 (10th Cir. 1943)); Martin,
930 S.W.2d at 720.  The equitable doctrine actually had a much broader
application; the trust fund theory applied whenever the assets of a dissolved
corporation were held by any third party, including corporate officers and directors,
so long as the assets were traceable and had not been acquired by a bona fide
purchaser. Id.








The Texas legislature ultimately codified the trust fund
theory in Article 7.12. Hunter, 620 S.W.2d at 550; Martin, 930
S.W.2d at 720.  Under Article 7.12, creditors were not given unlimited access
to the dissolved corporation=s assets; rather, the period of time
during which a corporation could be sued was limited to three years from the
date of dissolution. Tex. Bus. Corp. Act
art. 7.12(C).

Prior to the enactment of Article 7.12, Texas courts had
long applied the trust fund theory to dissolved corporations, but only as it
was embodied within the general framework of certain remedial statutes. Hunter,
620 S.W.2d at 550.  The effect of these statutes was to supplant the equitable
trust fund theory by creating a statutory equivalent.  Id.  According to
the Texas Supreme Court, A[i]n Texas, recognition of the trust fund
theory, as applied to dissolved corporations, did not exist apart from these
statutes.@  Id.  Furthermore, in Texas, suits against a
dissolved corporation are permitted only by statute. Id. at 551 (holding
that Article 7.12 bars resort to the trust fund theory as it exists apart from
the statute); Anderson v. Hodge Boats & Motors, Inc., 814 S.W.2d
894, 896 (Tex. App.BBBeaumont 1991, writ denied) (AArticle 7.12 . . .
provides [the] exclusive means whereby an injured party may assert a claim
after the dissolved corporation has ceased to exist for other purposes.@).

Thus, a suit against a dissolved corporation is purely a
statutory claim. Martin, 930 S.W.2d at 720; see also Hunter, 620
S.W.2d at 550B51.  Because Michael has no common law right to sue a
dissolved corporation, Gomez cannot establish an Open Courts violation. See
Bala v. Maxwell, 909 S.W.2d 889, 893 (Tex. 1995); Moreno,
787 S.W.2d at 355; Andress, 5 S.W.3d at 859.

However,
even if we were to hold that, under the facts of the present case, Michael has
a well-established common law cause of action for medical negligence against
Pasadena and Southmore, we would still conclude that Gomez cannot establish an
Open Courts violation. With respect to the second prong of the Sax test,
we cannot conclude that Article 7.12 is unreasonable or arbitrary when balanced
against the purpose and nature of the statute.  As appellees correctly note,
Texas common law did not provide for a cause of action against a dissolved
corporation. See Hunter, 620 S.W.2d at 550.  The enactment of Article 7.12 and
its predecessors allowed such claims to be brought, but with reasonable
limitations. See id.; Martin, 930 S.W.2d at 721.  As the court in
Martin noted:








The survival statute provides benefits for both the
claimant and for the dissolved corporation.  The claimant is allowed to sue a
dissolved corporation for three years after its dissolution, which he could not
do at common law.  The corporation=s benefit is that its potential
liability is not unlimited, but is terminated in three years.  In order to
enjoy these respective benefits, both the claimant and the corporation must
meet certain requirements.  The claimant must sue within three years of the
dissolution, and the corporation must have given notice of its dissolution to
all known claimants, under Texas Business Corporation Act, article 6.04.

Martin, 930 S.W.2d at 721.  The Texas
Supreme Court has stated that the purpose and basis of Article 7.12 was to (1)
allow claimants to sue a dissolved corporation for pre-dissolution activity for
three years after its dissolution; and (2) protect shareholders, officers, and
directors of a dissolved corporation from prolonged and uncertain liability. See Hunter, 620 S.W.2d at
550B51; Martin,
930 S.W.2d at 721.  Article
7.12 is not an unreasonable and arbitrary means to achieve this purpose.
Moreover, on these facts, Michael=s right to redress has not
effectively been abrogated.  Michael has a reasonable alternative remedy: a
cause of action against Hernon, Devine, and Meyer.  Because an alternative
remedy is available, Gomez cannot satisfy the second prong of the Sax test,
and thus cannot establish an Open Courts violation.  See Adams, 1994 WL 668198,
at *2 (finding no Open Courts violation when the minor children at issue still
had a cause of action against their father; on those facts, A[t]he legislature
ha[d] not unreasonably or
arbitrarily interfered with a common law cause of action or barred access to
the courts@); see also Nelson v. Metallic-Braden Bldg. Co., 695 S.W.2d 213,
215 (Tex. App.CHouston [1st Dist.] 1985, writ ref=d n.r.e.) (finding no Open Courts
violation when the appellant did not establish that he was effectively denied a
cause of action for his injuries, and concluding that, in light of the holding
in Sax, viable claims for damages against the other named defendants
constituted a reasonable alternative such that the legislature Aha[d] not abrogated his right to
redress for his injuries@).

We therefore overrule Gomez=s first issue.








II.       Section
10.01 of the Medical Liability and Insurance Improvement Act does not trump the
three-year survival provision of Article 7.12.

The next issue in this appeal is whether the statute of
limitations of section 10.01 of the Medical Liability and Insurance Improvement
Act (AMedical Liability
Act@)[5]
or the three-year survival provision of Article 7.12, applies to Gomez=s suit.  Gomez
contends that, in this case, Article 7.12 conflicts with the provisions of the
Medical Liability Act as construed by the Texas Supreme Court and with the
Court=s holding in Bala
v. Maxwell, and therefore the three-year survival provision of Article 7.12
should not be applied to Michael=s claims against
Pasadena and Southmore.  We disagree.

A.      The
Medical Liability Act is a tolling statute that allows a minor to sue for acts
of medical negligence committed during his minority until two years after
attaining the age of majority.

The Medical Liability Act, Texas Revised Civil Statutes,
Article 4590i, section 10.01, provided that health care liability claims on
behalf of minors must be filed no later than the minor=s fourteenth
birthday. Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws
2039, 2052 (amended 1993 and 1995), repealed by Act of June 2, 2003,
78th Leg., R.S., ch. 204, ' 10.09, 2003 Tex. Gen. Laws 847, 884
(hereinafter Medical Liability Act ' 10.01). 
Specifically, section 10.01 of the Act states:

Notwithstanding any other law, no
health care liability claim may be commenced unless the action is filed within
two years from the occurrence of the breach or tort or from the date of the
medical or health care treatment that is the subject of the claim or the
hospitalization for which the claim is made is completed; provided that
minors under the age of 12 years shall have until their 14th birthday in which
to file, or have filed on their behalf, the claim.








Id.
(emphasis
added).  Gomez correctly notes that in Weiner v. Wasson, the Texas
Supreme Court held that section 10.01 is unconstitutional as applied to
minors.  Instead, the Court concluded that, under the general tolling and
limitations provisions of Civil Practices and Remedies Code sections 16.001 and
16.003, a minor has until two years after attaining the age of majority to file
suit for acts of medical malpractice committed during his or her minority. Weiner
v. Wasson, 900 S.W.2d 316, 321 (Tex. 1995).  It is undisputed that Gomez=s claim was filed
before Michael=s twentieth birthday, and is therefore timely if the
Medical Liability Act controls.  Of significance here, the Medical Liability
Act is a tolling statute that tolls the tort statute of limitations for a
specific amount of time.

B.      Because
Article 7.12 is a survival statute, and not a statute of limitations, its
provisions govern this appeal.

However, Article 7.12 is a survival statute, not a statute
of limitations. See Hunter, 620 S.W.2d at 549; Martin, 930 S.W.2d
at 720.  The distinction between a statute of limitations and a survival
statute is that, Aa statute of limitations affects the time
that a stale claim may be brought while a survival statute gives life for a
limited time to a right or claim that would have been destroyed entirely but
for the statute.@ Martin, 930 S.W.2d at 720 (quoting
Davis v. St. Paul Fire & Marine Ins. Co., 727 F. Supp. 549, 551
(D.S.D. 1989)).  Article 7.12, a survival statute, Aarbitrarily
extend[s] the life of the corporation to allow remedies connected with the
corporation=s existence to be asserted.@ See id. (quoting
Davis, 727 F. Supp. at 551).  Thus, a survival statute creates a
right or claim that would not exist apart from the statute. Id. (citing M.S.
v. Dinkytown Day Care Ctr., Inc., 485 N.W.2d 587, 589 (S.D. 1992)); see
Anderson, 814 S.W.2d at 896.  And, the general rule is that when a cause of
action and a remedy for its enforcement are derived from a statute rather than
the common law, the statutory provisions are Amandatory and
exclusive, and must be complied with in all respects or the action is not
maintainable.@ Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71, 76
(Tex. 2000).








These distinctions between a statute of limitations and a
survival statute govern the outcome here.  When a plaintiff fails to sue within
the period provided by a statute of limitations, the claim still exists, but,
unless the statute of limitations affirmative defense is waived, it can no
longer be brought by that plaintiff. Martin, 930 S.W.2d at 721. 
Conversely, if a party fails to sue within the time limits of the survival
statute, there is no longer an entity that can be sued. Id.

Under Article 7.12, Gomez was required to file suit on
behalf of Michael within three years of Pasadena=s dissolution, or
the claim would thereafter be extinguished.[6]
Tex. Bus. Corp. Act art. 7.12. 
Gomez concedes he did not file suit against Pasadena until August 29, 2003,
nearly seven years after Pasadena=s dissolution. 
After its dissolution and passage of the three-year period, a corporation
cannot be sued because it no longer exists and the law provides no further
remedy against it. See Martin, 930 S.W.2d at 721; Pellow v. Cade,
990 S.W.2d 307, 313 (Tex. App.CTexarkana 1999, no pet.).  A statute of
limitations, which only extends the time in which an entity can be sued, does
not, and cannot, act to change this result and to revive an entity that no
longer exists and which the law no longer allows to be sued. See Martin,
930 S.W.2d at 721; Pellow, 990 S.W.2d at 313.  That is not the function
of a statute of limitations.

Therefore, Article 7.12 prevails over the statute of
limitations contained in the Medical Liability Act.  Because Gomez failed to
file Michael=s claims against Pasadena within three years of
Pasadena=s dissolution,
those claims are extinguished.  We overrule Gomez=s second issue.








III.      Michael
was a not a Aknown claimant@ for the purposes
of Article 6.04.

The final issue in this appeal is whether Michael was a Aknown claimant@ for the purposes
of Texas Business Corporation Act Article 6.04.  Gomez contends that, prior to
Pasadena=s dissolution,
Michael was a known claimant of Pasadena and Southmore, neither of which
notified him of Pasadena=s intent to dissolve as required by
Article 6.04.  Gomez asserts that the evidence demonstrating that Michael was a
known claimant is more substantial than that held sufficient to create a fact
issue in Martin, and argues that neither Pasadena nor Southmore should
get the benefit of the three-year survival provision of Article 7.12 because
they did not comply with the notice requirements of Article 6.04.  We disagree.

Gomez correctly notes that a business receives the benefit
of Article 7.12 only if it complies with the notice provisions of Article
6.04(A)(2). Martin, 930 S.W.2d at 721.  That provision requires a
corporation to Acause written notice by registered or
certified mail of its intention to dissolve to be mailed to each known claimant
against the corporation@ before filing articles of dissolution. Tex. Bus. Corp. Act art. 6.04(A)(2). 
Neither Pasadena nor Southmore informed Michael of Pasadena=s intention to
dissolve.  Thus, if Michael was a known claimant, then the three-year survival
provision of Article 7.12 would not operate to extinguish his claims against
Pasadena. Martin, 930 S.W.2d at 721.  Conversely, if Michael was an
unknown claimant, Pasadena did not have to notify him, and he cannot now sue
Pasadena. Id.








We hold that Michael was not a known claimant of Pasadena
prior to its dissolution, and therefore neither Pasadena nor Southmore were
obligated to provide him with the requisite statutory notice.  As the movant
for summary judgment, Pasadena was required to conclusively establish each
element of its affirmative defense. Sci. Spectrum, Inc., 941 S.W.2d at
911; Shirvanian, 161 S.W.3d at 106.  This entailed proof that Michael
Gomez was not a known claimant of Pasadena prior to its dissolution. See
D.B.&M. Co. v. Nat=l Chrome Plating
Co.,
975 S.W.2d 324, 326B27 (Tex. App.BBDallas 1994, writ
denied) (holding that it is the movant/corporation=s burden to
establish that it complied with the notice provisions of Article 6.04(A)(2)). 
Pasadena met its burden on summary judgment.








In addition to the affidavit and deposition testimony of
Christian C. Rice, Jr., the president of Pasadena prior to its dissolution, in
which Rice stated that Pasadena did not know of Michael=s claims, Pasadena
attached to its motion for summary judgment a ARisk Management
Summary,@ a list of all
persons thought to have potential claims against Southmore and/or its
constituent partners.  Neither Michael nor his parents are listed.  Although the Risk Management Summary
was apparently created for the sale of Southmore Medical Center, and was
compiled over six months prior to Pasadena=s dissolution, Gomez fails to rebut
Pasadena=s contention that it did not consider
Michael a potential claimant, much less a known claimant, before its
dissolution.  Moreover, contrary to Gomez=s assertion, the fact that the Risk
Management Summary encompassed Aevery known claim of every known incident of everything that
anybody even thought could possibly happen@ further buttresses Pasadena=s argument that Michael was not a
known claimant for the purposes of Article 6.04(A)(2).  Furthermore, in
stark contrast to the situation in Martin,[7]
Gomez provides no evidence, circumstantial or otherwise, to rebut Pasadena=s contention that
neither Pasadena nor Southmore knew of Michael=s claims prior to
Pasadena=s dissolution. 
Gomez made no showing that he ever made a claim against Pasadena before its
dissolution, much less that Pasadena or Southmore knew about any potential
claim that he would later make.  In fact, Gomez=s only argument concerning appellees= knowledge of Michael=s claim is grounded in their
possession of the medical records pertaining to Rose and the birth of Michael. 
Whatever the import of appellees= possession of these medical records,
being a known potential claimant is not sufficient to trigger the notice
requirements of Article 6.04(A)(2).[8] Martin,
930 S.W.2d at 722 n.7 (noting that Article 6.04 does not mention Apotential@ claimants, and finding no support in
Texas jurisprudence for the proposition that a dissolving corporation must
notify Apotential@ claimants).

Accordingly, there is no genuine issue of material fact
regarding whether Michael was a known claimant of Pasadena prior to its
dissolution.  We therefore overrule Gomez=s final issue.

Conclusion

Having addressed and overruled each
of Gomez=s issues, we affirm the trial court=s judgment.

 

 

/s/      Wanda McKee Fowler

Justice

 

Judgment rendered
and Opinion filed January 17, 2008.

Panel consists of
Justices Yates, Fowler, and Guzman.









[1]  On September 9, 2005, Gomez non-suited Touchstone
Health Care Management, Inc. without prejudice.





[2]  Gomez=s claims against Hernon, Devine,
and Meyer remain at the trial court level, and are not the subject of this
appeal.





[3]  Specifically, Gomez contends that AArticle 7.12 is unconstitutional when applied to
minors because it denies them their rights to due process and equal protection
under Article I, Sections 13 and 19 of the Texas Constitution.@  However, wholly absent from Gomez=s brief is any explanation, argument, or analysis
regarding equal protection or Article I, section 19 of the Texas Constitution. 
Therefore, Gomez has waived these arguments for failure to adequately brief the
issues, and we need not consider them here. Tex.
R. App. P. 38.1(h); see Vickery v. Vickery, 999 S.W.2d 342, 352B53 (Tex. 1999) (concluding that appellant waived
issues on appeal for failure to support her assertions with explanation or
argument); San Saba Energy, L.P. v. Crawford, 171 S.W.3d 323, 338 (Tex.
App.CHouston [14th Dist.] 2005, no pet.).





[4]  Gomez also argues that this Court=s application of Article 7.12 will further allow Ahealthcare corporations to dissolve after negligently
injuring minor patients and dispense with all assets that could have been
subject to the minor=s claim before the minor reaches majority[.]@ But, Article 6.08 of the Texas Business Corporation
Act provides a mechanism by which the court can order the revocation of
dissolution of a corporation upon a finding of actual or constructive fraud. See Tex. Bus. Corp. Act art. 6.08.
This provision allows the court to prevent healthcare corporations from taking
fraudulent actions.





[5]  The Medical Liability Act, Texas Revised Civil
Statutes, Article 4590i, _ 10.01, governs this case because it was filed before
September 1, 2003.  See Mills v. Pate, 225 S.W.3d 277, 284 (Tex. App.BBEl Paso 2006, no pet.).  Effective September 1, 2003,
the Legislature repealed the Medical Liability Act and replaced it with Chapter
74 of the Civil Practices and Remedies Code. Id. at n.2.





[6]  Appellant argues that this result is inconsistent with
the holding of the Texas Supreme Court in Bala v. Maxwell.  In that
case, the Court held that the phrase Anotwithstanding
any other law,@ included in section 10.01, unequivocally expressed
the legislature=s intent that the provisions of section 10.01 govern
when its time limitation provisions conflict with another law. Bala, 909
S.W.2d at 892B93.  However, the Court later clarified that the
language Aany other law@ is
triggered only when the statute or rule at issue purports to either commence,
toll, or extend limitations. See Chilkewitz v. Hyson, 22 S.W.3d 825, 830
(Tex. 1999).  To the extent that Article 7.12 is a survival statute, and not a
statute of limitations, its application is unaffected by the Anotwithstanding any other law@ language of section 10.01.





[7]  In Martin, the appellant similarly argued
that there was a fact issue as to whether his son was a Aknown claimant@ of
Texas Women=s Hospital (ATWH@) for the purposes of Article 6.04. Martin, 930
S.W.2d at 721.   However, in that case, there was circumstantial evidence that
TWH knew of the son=s claim, even though a lawsuit had not been filed
within the three-year period following TWH=s
dissolution: (1) TWH=s insurance company increased TWH=s policy limits, at TWH=s request, from $300,000 to $750,000 twenty days after the son=s birth; (2) TWH=s
insurance company backdated that increase to take effect on the very day of the
son=s birth; and (3) TWH sold its assets nearly nine
months later for $750,000, the exact amount of the increased insurance limits. Id.
at 721B22.  The court of appeals held that this evidence
created a fact issue about whether the son was a Aknown claimant@ of TWH. Id. at 721.  Granting the appellant
all reasonable inferences from the facts, the court concluded that the evidence
suggested (1) TWH moved quickly after the son=s birth to increase its policy limits, and backdate them to the date of
his birth, because they knew a significant claim would be made; and (2) the
$750,000 figure was selected because the shareholders were willing to sell TWH=s assets for that amount, as they later did, and
wanted assurance that at least that much of the proceeds would be protected
from medical malpractice plaintiffs, including the son. Id. at 722. 
Here, Gomez offers no such circumstantial evidence suggesting that appellees
knew that any claim would be made by Michael.  Moreover, Gomez has failed to
cite, and we have not found, any Texas cases that support his contention that a
healthcare corporation=s mere possession of medical records, without more,
can give rise to a fact issue sufficient to defeat summary judgment on whether
a party is a Aknown claimant@ of
that corporation, for the purposes of Article 6.04(A)(2).





[8]  In fact, five of the eight justices sitting en
banc to hear the Martin case agreed that being a known potential
claimant is insufficient to trigger the notice requirements of Article
6.04(A)(2). Id. at 722, 724.  The three remaining justices agreed with
the majority that the case should be reversed due to TWH=s failure to satisfy its burden on summary judgment. Id.
at 723.  The majority and dissenting opinions in Martin stated that
if the statutory phrase Aknown claimant against the corporation@ really means Aknown
potential claimant against the
corporation,@ almost any former medical patient would be entitled
to notice of corporate dissolution. Id. at 722 n.7.