**Vernon E. PELLOW, Enerlex, Inc., C. David Rhoades, and Jones & Pellow Oil Company, Appellants,**

v.

**Glen S. CADE, Appellee.**

**No. 06–97–00137–CV.**

Court of Appeals of Texas, Texarkana.

Submitted Dec. 15, 1998.

Decided Feb. 3, 1999.

Opinion on Overruling of Rehearing March 19, 1999.

Deborah J. Race, Ireland, Carroll, Kelley, Tyler, for appellants.

Todd Tefteller, Tefteller & Pelaia, Gilmer, Dwight Brannon, Gilmer, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Vernon Pellow and others appeal from a judgment declaring that Glen Cade is the owner of a one-eighth overriding royalty interest in an oil and gas lease covering a tract of land located in Upshur County, Texas.

### THE FACTS

In 1931, C.C. Julian formed C.C. Julian Oil & Royalties Company as an Oklahoma Express Trust. Within a few years, the company went into bankruptcy. On February 15, 1935, the United States District Court for the Western District of Oklahoma issued an order in the bankruptcy requiring the formation of a new company, an Arizona corporation named Julian Oil & Royalty Company. The order provided that each owner of a beneficial interest in the Oklahoma trust should exchange his interest for stock in the new Arizona corporation. If a beneficial owner failed to produce his stock for exchange, the new stock was to be issued in the owner's name and held for his benefit for eighteen months. If, after eighteen months, that owner's stock remained unclaimed, it was canceled and carried as treasury stock by Julian Oil & Royalty Company.

At the time of the bankruptcy, C.C. Julian Oil & Royalties Company owned an oil and gas lease covering land in the E.A.J. Evans survey. John Harrold, acting as receiver for C.C. Julian Oil & Royalties Company, sold the lease interest to Jones–Shelborne, Inc. In the assignment of the lease, Harrold reserved an undivided one-eighth overriding royalty. The one-eighth interest was transferred into the Arizona corporation, Julian Oil & Royalty Company.

On May 2, 1936, the federal district court signed an order confirming the plan of reorganization in bankruptcy. The court approved the articles of incorporation of the Julian Oil & Royalty Company. The order also contained the following provision:

> The Court orders and directs that all of the property and assets of the Debtor, when transferred and conveyed to the

Julian Oil and Royalty Company, a corporation, shall be free and clear of all claims of the Debtor, its creditors, and all its holders of Certificates of Beneficial Interest (except the rights provided for in paragraph 7 hereof), and all creditors of claimants against, and holders of Certificates of Beneficial Interest of, wherever situated or domiciled, are restrained and enjoined from pursuing or attempting to pursue, or commencing any suits or other proceedings at law, in Equity or otherwise, against the Julian Oil and Royalty Company, or any assets or property transferred by the Debtor;....

In 1954, Vernon Pellow and Fred Jones formed Jones & Pellow, Inc., an Arizona corporation. The two men were also principals in Julian Oil & Royalty Company. In 1961, the stockholders of Julian Oil & Royalty Company voted to dissolve the corporation. The resolution to dissolve the company was signed by Pellow, as secretary, and Jones, as vice-president. The Arizona Corporate Commission certified that the dissolution was completed on May 23, 1962.

While researching in the deed records of Upshur County in the 1980s, Glen Cade discovered the existence of the one-eighth overriding royalty interest executed to John Harrold as receiver for C.C. Julian Oil & Royalties Company by Jones–Shelburne, Inc. Cade investigated the status of the interest and discovered the transfer of the interest to the Arizona corporation, Julian Oil & Royalty Company.

Also in the late 1980s or early 1990s, Steven Snead, owner of appellant Enerlex, Inc., discovered the overriding royalty when he identified the property on the delinquent tax rolls of Upshur County. Snead was also a principal in an Oklahoma company called International Searchers, Inc.

During the time Cade and Snead were separately investigating the discovered interest, Exxon was holding monies in suspense to be paid to the proper owner.

This amount totaled approximately $40,000 to $50,000 in the late 1980s, and amounted to approximately $85,000 by 1994.

In 1987, C. David Rhoades became the sole shareholder of Jones & Pellow Oil Company. Rhoades testified that until this time Vernon Pellow had been the sole shareholder in the company. In 1991, the charter of Jones & Pellow Oil Company was revoked by Arizona for failing to file its annual report.

On May 7, 1993, nearly two years after its charter had been revoked, Jones & Pellow entered into an agreement with International Searchers, Inc. whereby International Searchers represented that it had located a debt owed to Jones & Pellow and agreed to pursue the collection of the debt on Jones & Pellow's behalf. Any amount collected was to be divided equally between International Searchers and Jones & Pellow. After entering into the agreement, International Searchers told Rhoades about the overriding royalty and also revealed that Exxon was holding money in suspense for Julian Oil & Royalty Company, the Arizona corporation.

At this time, Cade was continuing his pursuit of the one-eighth overriding royalty. In an attempt to acquire title to the interest, Cade purchased from Harold E. Dawson certificate number 2656, which represented forty-two shares of the C.C. Julian Oil & Royalties Company, a.k.a. Julian Oil & Royalty Company, along with any interest Dawson may have owned in property, either real or personal, which may be owned by C.C. Julian Oil & Royalties Company and/or Julian Oil & Royalty Company. Dawson had acquired the forty-two shares of C.C. Julian Oil & Royalties Company, which had originally been issued October 1, 1930, from his father, Edward Dawson. By this assignment, Cade acquired the certificate representing these shares. This certificate had never been exchanged for stock in the Arizona corporation in accordance with the bankruptcy order.

On June 7, 1994, Cade sued Julian Oil & Royalty Company and the unknown shareholders of Julian Oil & Royalty Company in the justice court of Upshur County. Cade's petition alleged that he was a shareholder in Julian Oil & Royalty Company by virtue of his ownership of the forty-two shares of C.C. Julian Oil & Royalties Company. Cade alleged that, at the time of the dissolution of Julian Oil & Royalty Company, the company was indebted to Edward Dawson, Cade's predecessor in interest, for the pro rata share of the net assets of the company, which he alleged had a value of $1,500. Cade sought damages in the amount of $1,500, plus interest from the time of dissolution in 1962.

In the justice court suit, Cade alleged that Julian Oil & Royalty did not maintain a registered agent in the state, so he attempted service on Julian Oil & Royalty Company through the Secretary of State pursuant to Article 8.10 of the Texas Business Corporation Act. *See* TEX. BUS. CORP. ACT ANN. art. 8.10 (Vernon 1980). He also cited the unknown stockholders by publication, pursuant to Section 17.004 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.004 (Vernon 1997). The Secretary of State forwarded the petition and citation to an Arizona address. The process was returned to the Secretary of State bearing the notation "NO SUCH NUMBER."

In the meantime, Steven and Mark Snead, principals in International Searchers, Inc., were also seeking to acquire the overriding royalty interest. On March 25, 1994, Julian Oil & Royalty Company, dissolved since 1962, assigned the royalty interest to Jones & Pellow Oil Company. The assignment was signed by Vernon Pellow, as vice-president and secretary of Julian Oil & Royalty. The assignment was recorded on April 4, 1994, in Upshur County.

On April 22, 1994, after the above assignment between Julian Oil & Royalty and Jones & Pellow, Cade took a no-an-swer default judgment against Julian Oil & Royalty in the justice court action.

On May 31, 1994, Jones & Pellow conveyed part of its interest in the minerals to Enerlex, Inc. This conveyance was signed by Rhoades, as president of Jones & Pellow.

On June 23, 1994, a writ of execution was issued on the judgment in Cade's justice court suit, and on July 6, the sheriff levied on the overriding royalty interest. A sheriff's sale was conducted on September 6, 1994, at which Cade was the highest bidder. The sheriff's deed to Cade was recorded on September 8, 1994.

On November 30, 1994, Cade filed suit in the district court, contending that he was the owner in fee simple of the property by virtue of the sheriff's sale. Cade alleged that Julian Oil & Royalty had purported to convey the overriding royalty interest to Jones & Pellow, who then purported to convey it to Rhoades and Enerlex. Cade argued that these conveyances created clouds on his title and asked the court to declare them void.

On May 29, 1995, Julian Oil & Royalty Company, by and through Vernon Pellow as an officer and shareholder, filed a petition for a bill of review of the justice court judgment Cade had taken in Upshur County. On May 30, 1995, Julian asked the district court to abate the matter until the justice court acted. The district court refused. The justice court denied the bill of review on July 12, 1995. The denial of the bill of review was then appealed to the county court. The county court also denied the bill of review.

On June 21, 1995, the Superior Court of Maricopa County, Arizona, rendered a declaratory judgment, wherein it declared that:

> [The conveyances between Julian Oil & Royalty Company and Jones & Pellow, and between Jones & Pellow and Enerlex] were done in compliance with Arizona statutes and law and are hereby confirmed to be valid and subsisting un-

der the laws of this State and superior to any interest of the defendants, Julian Oil, Jones & Pellow or their respective shareholders, and that C. David Rhoades and Vernon Pellow, in their respective corporate capacities, acted properly.

That judgment was not challenged in Arizona. On June 22, 1995, defendants filed a request for recognition of the judgment.

Cade's suit in the Upshur County District Court was tried nonjury in June of 1997. On September 8, 1997, the court rendered judgment that Cade was the legal and equitable owner of the overriding royalty interest. The court found Cade to be the owner of the property by virtue of the sheriff's deed and set aside the conflicting conveyances. The court awarded Cade $129,216.91, which consisted of $110,900.00 in royalties wrongfully paid to the appellants, and $13,316.91 in prejudgment interest. The court also awarded Cade attorney's fees.

On appeal, the appellants contend that:

(1) the justice court default judgment in Cade's favor was void because of lack of jurisdiction and defects in service of process;

(2) the bankruptcy orders prohibiting Cade from asserting any claim against Julian Oil & Royalty Company as a successor entity in bankruptcy prohibited him from acquiring title to the royalty interest;

(3) no title was conveyed in the sheriff's sale; and

(4) the trial court erred in disregarding the declaratory judgment from Arizona that addressed the same rights at issue here.

### ANALYSIS

In their first point, the appellants contend that the justice court judgment is void on its face and, consequently, subject to collateral attack.

A collateral attack on a judgment is an attempt to avoid its binding force in a proceeding not instituted for the purpose of correcting, modifying, or vacating it, but in order to obtain some specific relief against which the judgment stands as a bar. *Arkla Exploration Co. v. Haywood, Rice & William Venture*, 863 S.W.2d 112, 116 (Tex.App.Texarkana 1993, writ dism'd by agr.). A judgment is void only when it is apparent that the court rendering judgment "had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act as a court." *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex.1985). In a collateral attack, the judgment under attack is presumed valid. *Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994).

Generally, recitations in the judgment control the rest of the record on collateral attack. *Huffstutlar v. Koons*, 789 S.W.2d 707 (Tex.App.—Dallas 1990, orig. proceeding) (citing *Pure Oil Co. v. Reece*, 124 Tex. 476, 78 S.W.2d 932, 934–35 (1935)). However, public policy concerns allow inquiry into the larger record when the judgment is entered against a foreign defendant. *Hicks v. Sias*, 102 S.W.2d 460, 464 (Tex.Civ.App.—Beaumont 1937, writ ref'd). We are not bound by the recitations in the judgment, but may look at the entire record to determine if the court had jurisdiction.

The justice court did not have jurisdiction over the parties because, under Texas law, a claim did not exist against the parties named. Therefore, the service effected against Julian Oil & Royalty Company and its unknown shareholders was ineffective to confer jurisdiction on the justice court.

The capacity of a foreign corporation to defend a suit is determined by the laws of the state in which the corporation in created. *Country Cupboard, Inc. v. Texstar Corp.*, 570 S.W.2d 70, 72 (Tex.Civ. App.—Dallas 1978, writ ref'd n.r.e.). However, absent the proper invocation of for-

eign law by pleading and proof, Texas courts must presume the foreign law to be the same as that of Texas. *Id.* In the justice court suit Cade brought against Julian Oil & Royalty Company, an Arizona corporation, he did not raise the Arizona law, and no party in the district court action raised the issue of Arizona law as to survival of actions against a dissolved corporation. We therefore deem that Arizona law is the same as Texas law on the issue of the survival of a cause of action against Julian Oil & Royalty.

Article 7.12 of the Texas Business Corporation Act provides as follows:

A. A dissolved corporation shall continue its corporate existence for a period of three years from the date of dissolution, for the following purposes:

(1) prosecuting or defending in its corporate name any action or proceeding by or against the dissolved corporation;

(2) permitting the survival of any existing claim by or against the dissolved corporation; . . . .

TEX. BUS. CORP. ACT ANN. art. 7.12 (Vernon Supp.1999). This statute is a legislative enactment and modification of the equitable trust fund doctrine. At common law, the legal existence of a corporation was terminated on dissolution, along with all claims against the corporation. *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 549 (Tex.1981). In order to avoid the harsh effects of the common law, the trust fund doctrine emerged whereby a creditor of the dissolved corporation could pursue the traceable assets of the dissolved corporation on the theory that such assets were burdened with a lien in the creditor's favor. With the enactment of Article 7.12, the legislature supplanted the equitable trust fund doctrine by statute. The statute now provides the exclusive relief to those possessing a claim against a dissolved corporation. *Hunter*, 620 S.W.2d at 551. Absent Article 7.12, no claim exists against a dissolved corporation or its shareholders. *Dorney v. Henderson Clay Prods., Inc.*, 838 S.W.2d 314, 316 (Tex.

App.—Texarkana 1992, writ denied). The Texas Supreme Court has found that Article 7.12 expressed a legislative policy to protect shareholders, officers, and directors of a dissolved corporation from prolonged and uncertain liability. *Hunter*, 620 S.W.2d at 551. If a party fails to sue within the time limits of the survival statute, there is no longer an entity that can be sued. Civil suits may only be maintained against parties having an actual or legal existence. *Bailey v. Vanscot Concrete Co.*, 894 S.W.2d 757, 759 (Tex.1995); *Pure Oil Co. v. Walsh–Woldert Motor Co.*, 36 S.W.2d 802, 805 (Tex.Civ.App.—Texarkana 1931, writ dism'd).

Article 7.12 is a survival statute. It is not a limitations statute. When a cause of action is outside a limitation statute, it is only barred if the limitations issue is raised by the defendant. But when a cause of action is outside a survival statute's ambit, the cause of action is extinguished and no longer exists. *Martin v. Texas Woman's Hosp., Inc.*, 930 S.W.2d 717 (Tex.App.—Houston [1st Dist.] 1996, no writ).

The underlying justice court action in which Cade recovered a default judgment against Julian Oil & Royalty and its shareholders was commenced approximately thirty years following the dissolution of Julian Oil & Royalty Company. In his petition to the justice court, Cade alleged that Julian Oil & Royalty Company dissolved on or about May 26, 1961. The parties whom Cade served with process in 1994 did not exist. Because no legal entity was named as a defendant in the justice court action, there was no one to except to the pleadings or waive any defect therein. *Martin v. Texas Woman's Hosp., Inc.*, 930 S.W.2d at 721. The default judgment of the justice court is therefore a nullity.

In their second point, the appellants contend that Cade was precluded by the bankruptcy orders from asserting any claim against the Julian Oil & Royalty Company as a successor entity in bank-

ruptcy to C.C. Julian Oil & Royalties Company. This contention is a collateral attack on Cade's right of action in the justice court, which does not involve the jurisdiction of the court. Such an attack in this appeal is impermissible. *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex.1985).

■ In their third point, the appellants contend that Cade acquired no rights by virtue of the sheriff's sale, because the property had been previously conveyed by recorded conveyances. Because the sheriff's sale was conducted to satisfy a void judgment; no title passed to Cade by virtue of the sale. *Collins v. Miller*, 64 Tex. 118 (1885).

In the fourth point, the appellants complain that the Texas trial court improperly disregarded a declaration by an Arizona court whereby the Arizona court found the March 25, 1994 conveyance to be valid. The trial court found in its conclusions of law that Arizona law determined the powers which Julian Oil & Royalty and Jones & Pellow possessed. The issue of which state's law applies is a question of law we resolve by reviewing the record de novo. *Minnesota Mining and Mfg. Co. v. Nishika Ltd.*, 955 S.W.2d 853, 856 (Tex.1996).

■ The parties conceded and the trial court found that Arizona law governed in determining what powers the Arizona corporations had with respect to conveying and receiving the property. These conclusions are incorrect. We look to the principles enunciated in the Restatement (Second) of Conflict of Laws to decide which state's law applies. Section 223 of the Restatement states that "[w]hether a conveyance transfers an interest in land and the nature of the interest transferred are determined by the law that would be applied by the courts of the situs." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 223 (1971). In determining which law to apply, the court must look to where the dominant interest lies. Because the issue here involves the alienation of real property located in Texas, the situs has the domi-

nant interest, and Texas law should be applied. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 223 cmt. b (1971). Questions concerning title to real estate, the validity of conveyances, warranties, and foreclosures are determined by the law of the situs. *Colden v. Alexander*, 141 Tex. 134, 171 S.W.2d 328 (1943).

■ When a plaintiff sues in Texas on a judgment of a sister state, and introduces a properly authenticated copy of the judgment, he thereby establishes a prima facie case, and the burden of attacking the judgment and establishing reasons why it should not be given full faith and credit then shifts to the defendant. *Country Clubs, Inc. v. Ward*, 461 S.W.2d 651 (Tex. Civ.App.—Dallas 1970, writ ref'd n.r.e.). The situs state is not required to give full faith and credit to the judgment of a sister state which purports to act in rem and would directly affect the title to land in the situs state. *McElreath v. McElreath*, 162 Tex. 190, 345 S.W.2d 722 (1961).

■ Appellants claim that the Arizona judgment simply stated that the conveyances were done in accordance with Arizona law, and did not attempt to adjudicate title. The judgment goes further than the appellants have characterized. After confirming that the assignments of interest were done in accordance with Arizona law, the judgment states that the assignments "are hereby confirmed to be valid and subsisting under the laws of this State and superior to any interest of the defendants Julian Oil, Jones & Pellow. . . ." It appears that the Arizona judgment was presented to the Texas court as demonstrating that the conveyances were done in accordance with Arizona law and should therefore be determinative as to title.

The action here is purely one to determine title. Cade sought to have the title he received at the sheriff's sale cleared from any clouds which might exist due to the conveyances between Julian Oil & Royalty, Jones & Pellow, Enerlex, and Rhoades. Arizona cannot adjudicate title

to real property located in Texas. Thus, the trial court properly disregarded the Arizona judgment.

Because of our disposition, it is not necessary to discuss appellant's remaining arguments.

The judgment is reversed, and judgment is here rendered that Cade take nothing.

### ON REHEARING

On rehearing, Cade argues that we erred in holding that the justice court judgment was a nullity. In support of his argument, Cade describes the change in Article 7.12 governing the survival of claims against corporations. Cade points out that the 1980 version of the statute stated that:

> [T]he dissolution of a corporation … shall not take away or impair any remedy available to or against such corporation, its officers, directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within three years after the date of such dissolution.

TEX. BUS. CORP. ACT ANN. art. 7.12 (Vernon 1980). The 1980 version differs from the version that governs this case in that the current version does not name officers, directors, or shareholders specifically, but refers only to claims against a dissolved corporation. Cade argues that the absence of the reference in the current statute to officers, directors, or shareholders indicates that the Legislature intended the three-year survivability of actions to apply only to corporations. Therefore, he argues that an action could be maintained against Vernon Pellow, an officer and shareholder of Julian Oil & Royalty Company, and other third parties who received assets on the dissolution of Julian Oil & Royalty Company or received such assets by later transfer.

The House Committee Report on the changes that were implemented in 1991, states that the changes were needed to resolve inconsistencies with 7.12(B) which "make[ ] clear the fact that directors of a dissolved corporation continue to be accountable to the corporation for actions taken by them after dissolution (e.g., in authorizing post-dissolution distributions)." HOUSE COMM. ON BUSINESS AND COMMERCE, BILL ANALYSIS, TEX. H.B. 278, 72nd Leg., R.S. (1991).

Cade did not sue Vernon Pellow or the directors of Julian Oil & Royalty Company in the underlying justice court action. He sued the unknown shareholders and the dissolved corporation, all of whom were no longer liable for predissolution claims against the corporation. Thus, for the reasons stated in our original opinion, the judgment in the justice court and the subsequent sheriff's sale are void. Our decision today does not deprive Cade of a right to sue Pellow in his capacity as a director.

Cade also asks that we apportion the costs equally. TEX.R.APP. P. 43.4 provides that costs shall be awarded to the prevailing party unless good cause exists to otherwise assess them. We do not find good cause to depart from the standard rule as to costs.

The motion for rehearing is overruled.