

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00178-CV

MOHAMMED ALSHEIKH APPELLANT

V.

MURJAN ALTAWIL APPELLEE

----------

### FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 141-220098-06

----------

### MEMORANDUM OPINION[1]

----------

Appellant Mohammed Alsheikh, a former shareholder of M&M Wholesale Tires and Wheels, Inc. (d/b/a Tire Max) (M&M), appeals from the trial court's judgment against him and in favor of Appellee Murjan Altawil, also a former M&M shareholder, for conversion of M&M's property. Alsheikh brings three issues in which he claims that Altawil did not have standing to pursue his claims against

---

[1]*See* Tex. R. App. P. 47.4.

Alsheikh (and the trial court therefore lacked subject matter jurisdiction), that the damages are not supported by legally or factually sufficient evidence, and that the trial court abused its discretion by allowing the admission of evidence regarding another proceeding between the parties, Alsheikh's bankruptcy proceeding, and other events allegedly unrelated to the underlying suit. Because we hold that Altawil had standing to bring the claims against Alsheikh, that legally and factually sufficient evidence supports the jury's damages award, and that the trial court properly admitted the complained-of evidence, we affirm.

**Factual and Procedural Background**

In 2002, Alsheikh and Altawil opened a wholesale tire business together. They had previously operated a used tire store together, ending the partnership when Alsheikh sold his interest in the store to Altawil. The new business, M&M, was open for just over a year. In September 2003, the business dissolved.

About two years later, on September 14, 2005, Altawil sued Alsheikh, alleging that before the dissolution of their business, Alsheikh had taken assets, inventory, customers, and other property of M&M and had used it to establish a separate tire business of his own. Altawil alleged claims of fraud and breach of fiduciary duty and sought declaratory relief, the appointment of a receiver, and attorney's fees. On June 29, 2007, Alsheikh filed a notice in the trial court that he had filed for bankruptcy. The trial court abated the case the same day. In November 2008, Altawil's attorney notified the trial court that Alsheikh's bankruptcy had been dismissed. On April 22, 2009, the trial court reinstated the

2

case. Altawil filed an amended petition in September 2009 with a claim for conversion as an individual and as a derivative action.

Alsheikh filed an answer in which he asserted as an affirmative defense that Altawil lacked standing to bring his derivative action because he had failed to comply with section 21.553 of the business organizations code and that Altawil could not fairly and adequately represent the interests of the corporation in enforcing the corporation's rights.

Alsheikh filed several motions for continuance: an April 2010 motion asserting that he was enrolled in medical school in the Philippines and that trial was set for a week during which he had finals; a September 2010 motion asserting that he would be unable to appear at trial because he had been sentenced to six months' confinement in federal prison; and a January 2011 motion on the same ground. The trial was ultimately reset for September 19, 2011 in an agreed order.

On September 8, 2011, Altawil filed a second amended petition, adding an assertion of alter ego and a subdivision entitled "Request for Accounting" but dropping the request for a receiver. Altawil also added allegations that Alsheikh had filed suit against him in County Court at Law No. 3 in Tarrant County; that Altawil had filed counterclaims; that Altawil had been awarded a judgment for $45,549.45; that Alsheikh had filed for bankruptcy six days later; and that during the pendency of the bankruptcy, Alsheikh had transferred the inventory and assets of one of his companies, Wheels on Tires Inc., to his brother-in-law Ashraf

3

Taha in violation of the automatic stay. Alsheikh filed an amended answer, again asserting that "a derivative action does not lie" because Altawil had not complied with the prerequisites for a derivative action under the business organizations code. Alsheikh did not allege that any derivative claims had been extinguished.

At trial, Altawil began questioning Alsheikh in rebuttal about a sales contract between Alsheikh and Taha, concerning the conveyance of the assets of three entities owned by Alsheikh (Auto Tire City, Inc.; Golden Safa Real Estate, Inc.; and Asian Tires, Inc.) to Northside Tires and Wheels, Inc., another entity owned by Alsheikh, and the conveyance to Taha of an interest in Northside. Alsheikh's attorney objected that Altawil was "going greatly outside of the scope of this case, and it's against the motion in limine." The trial court held a bench conference off the record, and when questioning resumed, Altawil asked Alsheikh about the document. When Altawil moved to admit the document, Alsheikh objected, stating, "By the document itself, it's a sale to Northside. Nothing says—" At this point, the trial court called the parties to the bench and had a discussion off the record. When the trial court went back on the record, the court admitted the document as Plaintiff's Exhibit 23.

Outside the presence of the jury, Altawil also sought to admit the findings of fact and conclusions of law from the Tarrant County Court at Law No. 3 lawsuit. Altawil agreed to black out parts of the document, and Alsheikh's attorney responded that "Number 8 is the only thing that has to be struck out, if it's allowed in." When asked what category of damages the evidence related to,

4

Altawil stated that the evidence "would go to the credibility or truthfulness or the desire and potentially a breach of duty, because it shows hostility against my client."

Alsheikh objected that "the prejudicial fact outweighs the relevance of it." The trial court responded, "It is, but I mean, at some point in time if you do a bunch of stuff that you shouldn't do, you don't get to sit around and hide behind 403." The trial court ruled that it would allow admission of findings 2, 3, 4, 5, and 6.

The parties then had this exchange:

[Alsheikh's attorney]: This puts me in a position that I didn't have to try and deal with, Your Honor.

THE COURT: Well, it puts your client in a position of having to deal with his actions, yes, you are right. I mean, I didn't make your client file a false police report.

[Alsheikh's attorney]: I understand that, Your Honor.

THE COURT: He chose to do that. So—and it was in the middle of the break[-]up of the business.

[Alsheikh's attorney]: All right. Well, for fairness, then let's leave in 9, 10, 11, and 12 on the conclusions of law. I object to it going in at all.

THE COURT: Okay.

[Alsheikh's attorney]: I mean, I don't have any objection, but if Mr.— I'm fine with the Court just saying 1 through 6 or if we're going to skip over and do conclusions of law, I think the whole thing should go in.

THE COURT: I don't think they'll have any idea what a lot of this means.

5

[Altawil's attorney]:  And they may not, but basic is 2, 3, 4, 5, and 6.

When the jury returned, Altawil moved to have the document admitted, and the trial court admitted the entire document as Plaintiff's Exhibit 70.

In his closing argument, Altawil's attorney argued that Alsheikh was dishonest, and the evidence he pointed to in support of his argument included Plaintiff's Exhibit 70.  Alsheikh did not object at this point.  During Altawil's rebuttal argument, he discussed why the case had been tried so many years after the acts giving rise to his claims.  He stated,

> [Alsheikh's trial counsel] says stop this thing that's been going on for eight years, and what [he] neglected to tell you is that there [are] several reasons why this case didn't get tried until just now.  And those are largely because of [Alsheikh] here.
>
> As the evidence indicates, the documents concerning his Northside Tires, when that was admitted into evidence, considering what he said, I don't own it.  In there is referenced a bankruptcy proceeding he gave me.  And while the bankruptcy proceeding is going on, this things can't happen.  We are stayed—we are stopped.  We can't do anything—
>
> [Alsheikh's attorney]:  Your Honor, we're getting into evidence that's not—
>
> THE COURT:  Hold on.  Come up here.
>
> (At the bench, off the record)
>
> THE COURT:  Closing argument is not evidence, and anything said by the attorneys is not evidence, it's only their arguments.  If they try to state evidence that hasn't been admitted to in court before you, you are to disregard it.
>
> You may proceed.
>
> [Altawil's attorney]:  Thank you.

THE COURT:  And please disregard the last comment with regard to any bankruptcy.

Altawil's attorney then resumed his argument.

The jury found that Alsheikh had converted M&M's equipment, inventory, and personal property and that M&M had suffered damages of $160,000.  The jury further found that Altawil's reasonable and necessary attorney's fees were $44,000.

Alsheikh filed a motion for judgment notwithstanding the verdict (JNOV), asserting that the conversion claim belonged to M&M, that M&M's charter had been revoked on March 26, 2004, and that Altawil therefore did not have standing to bring the conversion claim or other derivative action because he did not bring the claims within three years of the date of the forfeiture.  Alsheikh asserted in the alternative (1) that there was insufficient evidence of the fair market value of the corporation's assets and (2) that the jury had been prejudiced by the admission of evidence relating to the proceedings in County Court at Law No. 3, the bankruptcy proceeding, Alsheikh's assignment of his assets to Taha, and references to Alsheikh's conviction.

The trial court denied the motion and rendered judgment on the jury's verdict.  Alsheikh then filed a motion for new trial making essentially the same arguments that he made in his motion for JNOV.  The trial court denied the motion, and Alsheikh now appeals.

7

**Standing**

In his first issue, Alsheikh argues that the trial court did not have subject matter jurisdiction over the conversion claim that was submitted to the jury because that claim, which belonged to the corporation, was extinguished as of March 26, 2007, three years after the corporation's charter was forfeited. Alsheikh relies on article 7.12 of the former Business Corporations Act, which provided that a dissolved corporation continues its corporate existence for a period of three years and that an existing claim by a corporation "shall be extinguished unless an action or proceeding on such existing claim is brought before the expiration of the three-year period following the date of dissolution."[2]

M&M's charter was forfeited by the Secretary of State effective March 26, 2004. Altawil filed his original petition in September 2005, but he did not add a section entitled "DERIVATIVE ACTION" until September 4, 2009, more than five years after the forfeiture of the charter. Alsheikh argues that because any claim the corporation could have brought had been extinguished, Altawil did not have standing to bring an action on the corporation's behalf.

---

[2]Act eff. Aug. 26, 1991, 72nd Leg., R.S., ch. 901, § 39, 1991 Tex. Gen. Laws 3187, 3188 (amended 1993) (currently codified at Tex. Bus. Orgs. Code Ann. §§ 11.356, .359 (West 2012)).

A shareholder does not have standing to bring a derivative claim that the corporation can no longer bring.[3]  If a party lacks standing to bring a claim, the trial court has no subject matter jurisdiction to decide it.[4]  Standing may be raised for the first time on appeal.[5]  Thus, Altawil is incorrect that the issue is one of capacity that could be waived.

At common law, dissolution terminated the legal existence of a corporation; once dissolved, the corporation could neither sue nor be sued, and all legal proceedings in which it was a party abated.[6]  The legislature enacted former article 7.12 to avoid the harsh effects of this common law doctrine.[7]  Under former article 7.12, a corporation whose charter had been forfeited had three years from the date of forfeiture to file suit on an existing claim before that claim would be extinguished.[8]

---

[3] *See Elloway v. Pate*, 238 S.W.3d 882, 900–01 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

[4] *Austin Nursing Center, Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005).

[5] *Id.*

[6] *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 549–50 (Tex. 1981).

[7] *Pellow v. Cade*, 990 S.W.2d 307, 313 (Tex. App.—Texarkana 1999, no pet.).

[8] *Gomez v. Pasadena Health Care Mgmt., Inc.*, 246 S.W.3d 306, 316 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also Pellow*, 990 S.W.2d at 313 ("When a cause of action is outside a limitation statute, it is only barred if the limitations issue is raised by the defendant.  But when a cause of action is

Citing section 16.068 of the Texas Civil Practice and Remedies Code, Altawil argues that all of his pleadings, no matter when he filed them in the lawsuit, directly relate back to his earlier claims.[9] Section 16.068 is inapposite, however, because it applies to limitations, not to the survival of claims under former article 7.12.[10] Although he cites section 16.068, Altawil's argument nevertheless focuses on the fact that his initial pleadings are related to and part of the same transaction as his specifically pleaded derivative action.

Texas follows a fair notice pleading standard.[11] Pleadings are to be liberally construed in favor of the pleader when the complaining party has not filed special exceptions to the pleadings.[12] Pleadings must give fair notice of the claim or defense asserted to provide the opposing party with enough information to enable him to prepare a defense or answer to the claim or defense asserted.[13]

---

outside a survival statute's ambit, the cause of action is extinguished and no longer exists.").

[9]Tex. Civ. Prac. & Rem. Code Ann. § 16.068 (West 2008); *cf. SJW Prop. Comm., Inc. v. Sw. Pinnacle Props., Inc.*, 328 S.W.3d 121, 145 (Tex. App.— Corpus Christi 2010, pet. denied) (op. on reh'g) (discussing applicability to limitations issues).

[10]Tex. Civ. Prac. & Rem. Code Ann. § 16.068.

[11]*Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex. 1979).

[12]*Bank One, Tex., N.A. v. Stewart*, 967 S.W.2d 419, 430 (Tex. App.— Houston [14th Dist.] 1998, pet. denied) (op. on reh'g).

[13]*Id.*; *see also* Tex. R. Civ. P. 45(b), 47(a).

A petition is sufficient if a cause of action or defense may be reasonably inferred from the facts specifically stated in the petition.[14]

Altawil's original petition included allegations that "Defendant has taken assets, equipment, vehicles, inventory, and customer and price lists of M&M . . . and has used same in the establishment of Defendant's new business," and "Defendant has, for all practical purposes, continued the business operations of M&M . . . but has claimed that the business is his sole operation and enterprise."  Additionally, Altawil sought an injunction against Alsheikh's "[s]elling assets outside the ordinary course of business" and "[t]ransferring assets outside the ordinary course of business" in his current business enterprise; sought the appointment of a receiver for both M&M and Wheels on Tires; and sought the liquidation of the assets of both corporations along with an accounting.  Finally, Altawil asked for a declaratory judgment that M&M and Wheels on Tires were "one and the same" and that the transfer of M&M's assets to Wheels on Tires was fraudulent and for the placement of a constructive trust on Wheels on Tires's assets because "Defendant is holding the assets of Wheels on Tires as the assets of Plaintiff *or in the alternative as the assets of M&M*."  [Emphasis added.]

---

[14]*Bank One*, 967 S.W.2d at 430; *see Daniels v. Allen*, 811 S.W.2d 278, 280 (Tex. App.—Tyler 1991, no writ) ("The key to determining whether a cause of action has been pleaded is whether there are sufficient allegations to give fair notice of the claim, not whether certain magic words are used in certain portions of the petition."), *overruled on other grounds*, *Tucker v. Thomas*, 419 S.W.3d 292, 299 (Tex. 2013).

Under the fair notice pleading standard, a cause of action for Alsheikh's conversion of M&M's assets can be reasonably inferred from the facts stated in Altawil's original petition, which was filed before the expiration of three years after the forfeiture of M&M's charter.[15]  That Altawil did not use the "magic words" "derivative action" or specifically pray for relief under the Texas Business Organizations Code or former Business Corporations Act does not change that he pled facts indicating his intent to recover for Alsheikh's taking and secreting assets from M&M, either because of individual injury or because the assets belonged to M&M.  Thus, M&M's conversion claim was not extinguished by operation of former article 7.12, and Altawil had standing to bring the derivative claim on behalf of M&M.  We overrule Alsheikh's first issue.

**Damages**

Alsheikh argues in his second issue that the trial court should not have granted judgment for damages of $80,000 for conversion because there was no proper proof of damages and that the evidence was legally and factually insufficient to prove the actual amount of damages and the fair market value of the property allegedly converted.

Altawil contended at trial that the conversion of the tires occurred in August or September 2003.  He testified that in July 2003, M&M had about 1,700 new

---

[15]*See Clifford v. McCall-Gruesen*, No. 02-13-00105-CV, 2014 WL 5409085, at *4 (Tex. App.—Fort Worth Oct. 23, 2014, no pet.) (mem. op. on reh'g).

tires in inventory worth about $150,000 and around 15,000 used tires worth between $75,000 and $150,000. When M&M shut down, he received only about 70 new tires and 2,000 used tires. The trial court admitted Altawil's Exhibit 12, which consisted of several invoices reflecting sales of $68,118.92 in new tires from M&M to Tire City. Altawil testified that Alsheikh never paid M&M for those tires, and Alsheikh admitted that there was no evidence that Tire City actually paid for the tires; he also admitted that the August and September bank statements for Tire City showed no payments to M&M. Alsheikh answered "Yes" when asked, "In fact, $68,000 of new tires and . . . about $18,000 worth of used tires, for a total of $86,000 went to . . . your companies, right?"

A former M&M employee testified that while normal inventory for M&M had been around 1,500 tires, by September 3, 2003, only 1,067 tires were there and only 574 by September 4, 2003, the very next day. He attributed that reduction to a transfer to Tire City. That former employee also testified that the value of used tires was between $7 and $25 per tire. He did not keep an inventory of the used tires. Additionally, one of Tire City's employees testified that although Alsheikh kept actual sales figures for his own purposes, he reported different sales figures to the government.

Not only can a property owner testify to its fair market value without the necessity of expert testimony, the principals of a closely held corporation can

13

likewise testify as to the market value of that corporation's personal property.[16] Alsheikh does not dispute that Altawil owned part of M&M. Thus, the jury could have considered the testimony of both Altawil and Alsheikh as to the value of M&M's inventory. Moreover, the jury could have chosen to believe Alsheikh's admission of the tires' value without believing the rest of his testimony.[17] We hold that the damages award was supported by legally and factually sufficient evidence, and we overrule Alsheikh's second issue.

**Admission of Complained-of Evidence**

In his third issue, Alsheikh claims that the trial court abused its discretion by admitting Exhibits 23 and 70. Altawil argues that Alsheikh did not preserve his relevance complaints, but we understand both objections in context to be relevance objections under Rule 402, which the trial court impliedly overruled.[18] Also, as to Exhibit 70, Alsheikh's counsel additionally objected that its relevance

---

[16]*Redman Homes, Inc. v. Ivy*, 920 S.W.2d 664, 669 (Tex. 1996); *Red Sea Gaming, Inc. v. Block Invs. (Nevada) Co.*, 338 S.W.3d 562, 572 (Tex. App.—El Paso 2010, pet. denied); *Bower v. Processor & Chem. Serv., Inc.*, 672 S.W.2d 30, 32 (Tex. App.—Houston [14th Dist.] 1984, no writ); *Maxey v. Tex. Comm. Bank of Lubbock*, 571 S.W.2d 39, 46 (Tex. App.—Amarillo 1978), *writ ref'd n.r.e.*, 580 S.W.2d 340 (Tex. 1979).

[17]*See City of Keller v. Wilson*, 168 S.W.3d 802, 819–20 (Tex. 2005).

[18]*See* Tex. R. Evid. 402; *see also* Tex. R. App. P. 33.1(a); *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997); *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g).

was outweighed by its prejudicial effect, thus preserving his Rule 403 complaint.[19]

Altawil offered Exhibit 23 to impeach the credibility of one of Alsheikh's witnesses, Jose Tovar, who worked for Taha. Tovar had unequivocally testified that Alsheikh had never owned an interest in Northside Tires, which is owned by Taha. The 2008 contract of sale in Exhibit 23 states that Alsheikh owned one hundred percent of the stock in Northside and was transferring it to Taha in cancellation of a debt.

Evidence that is otherwise admissible for impeachment purposes may nevertheless be inadmissible under Rule 403 when "its probative value is substantially outweighed by the danger of unfair prejudice."[20] "A defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias, or interest for the witness to testify, and therefore, the scope of appropriate cross-examination is necessarily broad."[21] But "[t]he proponent of evidence to show bias must show that the evidence is relevant[; the] proponent does this by demonstrating that a nexus, or logical connection,

---

[19]*See* Tex. R. Evid. 403; *see also* Tex. R. Evid. 103(a)(1).

[20]Tex. R. Evid. 403, 613; *Comm. & Indus. Ins. Co. v. Ferguson-Stewart*, 339 S.W.3d 744, 746–47 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

[21]*Smith v. State*, 352 S.W.3d 55, 64 (Tex. App.—Fort Worth 2011, no pet.).

exists between the witness's testimony and the witness's potential motive to testify in favor of the other party."[22]

Exhibit 23 is clearly logically connected to the issues at trial. Altawil sought to show that Alsheikh had lied repeatedly about the structure, income, and assets of his business dealings and that he had attempted to exercise influence over witnesses in exchange for their favorable testimony. Exhibit 23 is relevant to the interconnectedness of Alsheikh's and Taha's business dealings.

Additionally, Exhibit 70, containing the findings of fact from the parties' dispute in the county court at law, is likewise sufficiently connected to the issues at trial. The exhibit corroborates the contentious nature of Alsheikh with respect to Altawil in connection with the two lawsuits, especially as it relates to Altawil's attempt to protect and preserve the assets of M&M. Moreover, the findings of fact showing the background of the unraveling relationship between Alsheikh and Altawil, including the bankruptcy proceeding, help account for Altawil's delay in bringing his case to trial, which Alsheikh emphasized and Altawil was entitled to explain. We hold that the trial court did not abuse its discretion by admitting the evidence. We overrule Alsheikh's third issue.

**Conclusion**

Because we have overruled all three of Alsheikh's issues, we affirm the trial court's judgment.

_____

[22]*Id.* at 64.

/s/ Lee Ann Dauphinot  
LEE ANN DAUPHINOT  
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

WALKER, J., concurs without opinion.

DELIVERED:  January 29, 2015